Osborne *v.* Eslinger.

---

## OSBORNE ET AL. *v.* ESLINGER.

[No. 18,849.   Filed October 23, 1900.]

155   351
155   500
155   351
161   63
161   67
162   158

DEEDS.—*Delivery.*—A grantor executed certain deeds and placed them in an envelope with her name and the words "Deeds to children" indorsed thereon. She kept them in her possession for about two years, and then handed a package containing the deeds to an aged relative who lived with her, and instructed her to take care of the papers until after her death, and then to deliver them to the one who was to settle her estate. She afterward took possession of the package and placed it in a press in her house, saying to the relative, "In case I get sick you take care of these papers, and when I die give them to the one who settles my estate." Soon afterward she became sick and called the relative to her bedside and asked her if she had taken charge of the papers, and being informed that she had, said "All right." The custodian of the package did not know what it contained, but after the death of the grantor delivered the deeds to the grantees therein named. *Held*, that there was no delivery. *pp. 352-364.*

PARTITION.—*Attorney's Fees.*—Where defendants in a partition proceeding appeared by counsel and resisted the petition, it was error to tax them with fees of the attorneys of their adversary. *p. 364.*

From the Sullivan Circuit Court. *Affirmed.*

*J. T. Hays* and *J. S. Bays,* for appellants.
*J. C. Briggs* and *J. W. Lindley,* for appellee.

DOWLING, J.—Action for the partition of lands. Issues were formed; there was a trial by the court, a special finding of facts on which the court stated its conclusions of law, and judgment for appellee.

The following is the substance of the special finding: Martha J. Osborne, a widow, was the owner in fee simple of the lands described in the complaint, and resided thereon at the time of her death, which took place April 23, 1897; she left surviving her the appellants, who were her children, and the appellee, who was her grandchild, and the only heir of a deceased daughter of Mrs. Osborne; the latter executed a will April 3, 1894, which was duly admitted to probate, by which she divided her personal estate equally among her surviving children, the appellants herein, one William L. Dix being nominated as executor.

March 6, 1893, the said Martha J. Osborne, by deed, conveyed a part of her real estate to her sons Hardy Osborne and James A. Osborne, two of the appellants, and on May 16, 1895, she caused to be prepared, and then signed and acknowledged three other deeds, viz., a deed to George W. Osborne and Josephine Dix, a deed to Elizabeth Riggs and Matilda Drake, and a deed to Stephen Parks Osborne and Allen T. Osborne. Said three deeds purported to convey all the lands owned by Mrs. Osborne, excepting those described in the deed previously made to Hardy and James A. Osborne. Mrs. Osborne placed the four deeds in an envelope, indorsed, "Martha J. Osborne. Deeds to children", sealed it, took them home with her, and kept the deeds in her possession until the spring of 1897.

After the execution of her will, she placed it in an envelope, which was then sealed, and indorsed "Last will of Martha J. Osborne," and the will so remained until after the death of the said testatrix.

In the spring of 1897, Mrs. Osborne handed the deeds and the will, wrapped together in a paper, to one Mary Davis, an aged sister-in-law, who made her home with her, saying that she desired Mrs. Davis "to take care of the papers, and keep them until after her, Mrs. Osborne's death, and then deliver them to the one who should settle her estate." Upon reflection, and because of the advanced

age of Mrs. Davis, who was then seventy-two years old, Mrs. Osborne took back the papers, and put them in a "press" in her home, and told Mrs. Davis she had placed them there, adding, "In case I get sick, you take care of these papers, and when I die give them to the one who settles my estate." Mrs. Osborne was then in good health, but soon afterwards became very ill. Agreeably to her instructions, Mrs. Davis took the papers from Mrs. Osborne's "press", and deposited them in a box of her own, over which she had exclusive control, and so kept them until after the death of Mrs. Osborne. The next day after Mrs. Osborne was taken sick she called Mrs. Davis to her bedside, and asked if she had taken charge of the papers as she, Mrs. Osborne, had requested. Mrs. Davis answered, "Yes, I have." Mrs. Osborne responded, "All right." Mrs. Osborne died April 23, 1897.

Soon after the death of Mrs. Osborne, Mrs. Davis met all of the appellants, and also William L. Dix (who had been named as executor of Mrs. Osborne's will), at the late residence of the decedent. She handed the envelope containing the deeds to Allen T. Osborne, who read them, and delivered them to the grantees, respectively. The grantees caused the deeds to be recorded in the proper office, and thereupon took and ever since have held possession of the several parcels of land. The will of Mrs. Osborne, also, was delivered by Mrs. Davis to Allen T. Osborne at the time the deeds were delivered. It was opened, read, and was afterwards admitted to probate in the proper county, and is yet in full force. Mrs. Mary Davis had no knowledge that the package entrusted to her by Mrs. Osborne contained said deeds and will until after the death of Mrs. Osborne, but she did know that Mrs. Osborne had selected William L. Dix to settle her estate.

The conclusions of law stated by the court upon the foregoing facts were these: "(1) That the said deeds made by Martha J. Osborne to the several cross-complainants herein

were not fully and lawfully executed, for want of a lawful delivery. (2) That the plaintiff is the owner in fee simple, by descent from Martha J. Osborne, of an undivided one-ninth interest in the following real estate, in Sullivan county, Indiana, to wit: The southeast quarter of section seven, township eight north, range nine west, 160 acres more or less. (3) That the plaintiff is entitled to partition of her interest in said land."

It is contended on behalf of appellants that the acts and words of Mrs. Osborne, when she placed the deeds in her "press", and instructed Mrs. Davis that in case she, Mrs. Osborne, got sick, to take care of the papers, and when she died to give them to the one who settled her estate, together with the act and declaration of Mrs. Davis after Mrs. Osborne became ill in taking possession of the papers, with the knowledge and approval of Mrs. Osborne, constituted a sufficient delivery. On the other hand, the appellee insists that there was no delivery, that Mrs. Osborne never intended to part with her control over the deeds, and that Mrs. Davis held them only as the bailee and for the use of Mrs. Osborne.

This court has frequently been called upon to decide whether or not a deed had been delivered, and a few of the cases, with the circumstances attending the supposed delivery in each of them, are the following.

In *Fewell* v. *Kessler*, 30 Ind. 195, the parties to a deed caused it to be prepared, and agreed that it should be signed and acknowledged, and left with a justice of the peace for the grantee. In deciding the case, Frazer, J., said: "Nothing is plainer in the law than that such facts constitute a good delivery of a deed."

One Loveless placed a deed in the hands of one Rash, to be held by him during the grantor's lifetime, for certain of Loveless' children, and, at his death, to be delivered by Rash to the grantees named therein. Rash accepted the deed and held it for the grantees until shortly after the

death of the grantor, when he delivered the same to the grantees. The court said: "These facts show that William Loveless verbally authorized Rash, as his agent, to do the things mentioned. Upon the death of Loveless the authority was thereby revoked, and Rash ceased at once to be the decedent's agent for any purpose, and therefore could not, for the deceased grantor, deliver the deed." *Jones* v *Loveless,* 99 Ind. 317, 325.

In *Owen* v. *Williams,* 114 Ind. 179, the grantor was about to undergo a dangerous surgical operation. He gave to one of his sons a large bundle of papers, among which were deeds to his children inclosed in a sealed envelope, saying, "Here are the deeds belonging to you children; take care of them, and after my death deliver them to the children." He afterwards said to the son who had the papers: "I want you to see that the children get the deeds, after my death." *Held,* a sufficient delivery to all of the grantees.

Smiley and wife executed five deeds by which they conveyed certain lands to the husband's children and grandchildren. Two years afterwards Smiley made a will in which he referred to these deeds, and directed his executor, at his death, to deliver them to the grantees. A few days after the execution of the will Smiley placed the deeds in the hands of a son, and directed him to retain them until he, the grantor, should die, and then to deliver them to the grantees, respectively. *Held,* a good delivery as to all. *Smiley* v. *Smiley,* 114 Ind. 258.

In *Goodpaster* v. *Leathers,* 123 Ind. 121, the deed was duly signed and acknowledged by the grantor in his lifetime, and was by him deposited in the hands of a third person, with instructions to deliver to his widow after his death. Upon these facts, the court by Mitchell, C. J., said: "Where a grantor signs and acknowledges a deed, and deposits it with a third person, to be delivered by him to the grantee at the death of the grantor, without reserving to himself any right to control or record the instrument, if the

deed is afterwards delivered to the grantee the title passes, and the deed ordinarily takes effect by relation, as of the date of the first delivery."

In *Dinwiddie* v. *Smith,* 141 Ind. 318, the deed was delivered by the grantor to a third person for the use of the grantee. The deed was sustained.

S., together with his wife, signed and acknowledged a deed conveying to his daughter, Mary R., certain real estate. He handed the deed to his wife, saying, "Take it, and keep it in a safe place until my death, then deliver it to B. F. Wells." Indorsed on the deed were the words, "After my death, this deed to be delivered by B. F. Wells." The wife kept the deed as directed, and, at the death of the grantor, delivered the same to Wells, who caused it to be recorded, and then delivered it to the grantee. The court held that the deed was not invalid as an attempt by the grantor to make a testamentary disposition of the land without the formalities of a will, and that the delivery to the wife for the grantee was effectual. *Stout* v. *Rayl,* 146 Ind. 379.

In *Stokes* v. *Anderson,* 118 Ind. 533, 4 L. R. A. 313, the facts were these. S. signed a deed, bill of sale, and promissory note, and left them upon the table. He neither said nor did anything to indicate an intention to deliver them; on the contrary, the circumstances indicated that he did not wish to execute the writings at that time. He reserved the right to examine them on the next day, and it was agreed that, if they were found to be incorrect, correction should be made. While the papers were so lying upon the table, one of the persons named in them took them up and gave them to his clerk with instructions to put them in his vault. *Held,* that there was no delivery.

It was said by Chancellor Kent, in *Souverbye* v. *Arden,* 1 Johns. Ch. 240, 255: "It is not to be understood that mere formal words of delivery will, in all cases, bind the party, and render the deed absolute. If it be declared, or

agreed, at the time of execution, that the deed is not to pass out of the possession of the grantor, until certain conditions are complied with, the deed will not operate until certain conditions are fulfilled. This has been so ruled at law, in the cases of *Jackson* v. *Dunlap,* and of the *Derby Canal Co.* v. *Wilmot* (1 Johns. Cas. 114, 9 East. 360) ; and there is much good sense and equity in the decision. But if there be no such agreement or intention made known at the time, and both parties are present, and the usual formalities of execution take place, and the contract is to all appearance consummated, and the deed is left in the power of the grantee, or in the custody of his particular friend, without special instructions, there is no case to be found in law or equity, in which such a delivery is not held binding.

"A voluntary settlement, fairly made, is always binding in equity upon the grantor, unless there be clear and decisive proof that he never parted, nor intended to part, with the possession of the deed; and even if he retains it, the weight of authority is decidedly in favor of its validity, unless there be other circumstances, beside the mere fact of his retaining it, to show it was not intended to be absolute."

*Garnons* v. *Knight,* 5 Barn. & Cress. 671, 687, 688, a leading English case upon the subject of what is necessary to constitute a valid delivery of a deed turned upon these facts. In July, 1814, Mr. Wynne, an attorney, who was seized in fee of the premises in question, made a communication through a friend to the lessor of the plaintiff, who was a client, that he (Wynne) had misapplied above £10,000 of his (Garnons') money. Garnons answered, he relied and expected that Wynne would provide him securities for his money, and Wynne said he would make him perfectly secure, and he should be no loser. On the 12th of April, 1820, Wynne went to his sister's who, with her niece, lived next door to him, and produced the mortgage in question, ready sealed. He then signed it in the presence of the niece and used the words, "I deliver this as my act and

deed." The niece, by his desire, attested the execution, and then Mr. Wynne took it away. The niece knew not what the deed was, nor was Mr. Garnon's name mentioned. In the same month of April, he delivered a brown paper parcel to his sister, saying, "Here, Bess, keep this; it belongs to Mr. Garnons." He came for it again in a few days, and she gave it to him; and he returned it on the 14th, 15th, or 16th of April, saying, "Here, put this by." It was then less in bulk than before, and contained the mortgage in question. Mr. Wynne died the 10th of August following, and, after his death, the parcel was opened, and the mortgage found. Mr. Garnons knew nothing of the mortgage until . after it was so found. One of the questions in the case was whether the mortgage was duly executed, and whether the delivery to the sister was a good delivery.

In deciding the case, Bayley, J., said: "Can there be any question but that delivery to a third person, for the use of the party in whose favor a deed is made, where the grantor parts with all control over the deed, makes the deed effectual from the instant of such delivery? The law will presume, if nothing appear to the contrary, that a man will accept what is for his benefit [*per* Lord Ellenborough in *Stirling* v. *Vaughan*, 11 East. 619, 11 Rev. Rep. 280], and there is the strongest ground here for presuming Mr. Garnons' assent, because of his declaration that he relied and expected Mr. Wynne would provide him security for his money, and Wynne had given an answer importing that he would. Shepherd, who is particularly strict in requiring that the deed should pass from the possession of the grantor (and more strict than the cases I have stated imply to be necessary), lays it down that delivery to the grantee will be sufficient, or delivery to any one he has authorized to receive it, or delivery to a stranger for his use and on his behalf. Shep. Touch. 57; 2 Rolle Abr. (K) 24, pl. 7; *Taw* v. *Bury,* Dyer, 167b, 1 And. 4; *Alford* v. *Lea,* 2 Leon 110, 1 Cro. Eliz. 54; and 3 Coke 27a, are clear authorities that,

Osborne *v.* Eslinger.

on a delivery to a stranger for the use and on the behalf of the grantee, the deed will operate *instanter,* and its operation will not be postponed till it is delivered over to or accepted by the grantee. The passage in Rolle's Abridgment is this: 'If a man make an obligation to I., and deliver it to B., if I. get the obligation, he shall have action upon it, for it shall be intended that B. took the deed for him as his servant, 3 Hen. VI., 27.' The point is put *arguendo* by Paston, Sergt., in 3 Hen. VI., who adds, 'For a servant may do what is for his master's advantage, what is to his disadvantage, not.' "

The rule is thus stated by eminent textwriters: "Where a grantor executes a deed, and delivers it to a third person to hold until the death of the grantor, the latter parting with all dominion over it, and reserving no right to recall the deed, or alter its provisions, it seems to be settled by the weight of authority that the delivery is effectual, and the grantee, on the death of the grantor, succeeds to the title." Devlin on Deeds (2nd ed.),. §280, citing *Lang* v. *Smith,* 37 W. Va. 725, 17 S. E. 213; *Ruggles* v. *Lawson,* 13 Johns. 285; *Tooley* v. *Dibble,* 2 Hill 641; *Gcodell* v. *Pierce,* 2 Hill 659; *Squires* v. *Summers,* 85 Ind. 252; *Bury* v. *Young,* 98 Cal. 446, 33 Pac. 338.

"In determining what will constitute a sufficient delivery, it is found that the intention is the controlling element. No particular formality need be observed, and the intention to deliver the deed may be manifested by acts, or by words, or by both. But one or the other must be present to make a good delivery." Tiedeman on Real Prop. (2nd ed.), §813.

"Where the deed is delivered to the grantee named, the law presumes it was done with an intent, on the part of the grantor, to make it his effectual deed; but if it is delivered to a stranger, and nothing is said at the time, no such inference is drawn from the act of delivery. * * * If delivered to the grantee himself, no words are necessary, since the law presumes in such case it is for his use. If

delivered to a stranger, there is no such presumption; and there must, therefore, be some evidence, beyond such delivery of his intent thereby to part with his title. But no precise form of words is necessary to declare such intent. Anything that shows that the delivery is for the use of the grantee is enough." 3 Washb. on Real Prop. (5th ed.), p. 314, §582.

Where the claim of title rests upon the delivery of the deed to a third person, the deed must have been properly signed by the grantor, and delivered by him, or by his direction, unconditionally, to a third person for the use of the grantee, to be delivered by such person to the grantee, either presently, or at some future day, or upon some inevitable contingency, the grantor parting, and intending to part, with all dominion and control over it, and absolutely surrendering his possession and authority over the instrument, so that it would be the duty of the custodian or trustee for the grantee, on his behalf, and as his agent and trustee to refuse to return the deed to the grantor, for any purpose, if demand should be made upon him. And there should be evidence beyond such delivery of the intent of the grantor to part with his title, and the control of the deed, and that such delivery is for the use of the grantee.

If the deed is placed in the hands of a third person, as the agent, servant, friend, or bailee of the grantor, for safe-keeping only, and not for delivery to the grantee; if the fact that the instrument is a deed is not made known to such third person, either at the time it is handed over, or at any time before the death of the grantor; if the name of the grantee, or other description of him, is not given; and, if there is no evidence beyond the mere fact of such delivery of the intent of the grantor to part with his control over the instrument and his title to the land, then such transfer of the mere possession of the instrument does not constitute a delivery, and the instrument fails for want of execution.

As shown by the special finding, Mrs. Osborne had the

Osborne *v.* Eslinger.

deeds prepared in May, 1895. She then signed and acknowledged them. She placed them in an envelope indorsed, "Martha J. Osborne. Deeds to children." She kept them in her own possession and under her own control until the spring of 1897. She then handed a package containing the deeds and also her will to an aged lady, a relative, who made her home with her, and instructed her to *take care* of the papers until after her death, and then to deliver them *to the one who was to settle her estate.* She afterwards took the package from her relative, Mrs. Davis, and placed it in a "press" in her home, informing Mrs. Davis of the fact that she had put them there. She added: "In case I get sick, you *take care of these papers,* and when I die give them to the one who settles up my estate." Soon afterwards Mrs. Osborne became ill, and calling Mrs. Davis to her bedside, asked her if she had taken charge of the papers. Mrs. Davis answered: "Yes, I have." Mrs. Osborne said: "All right."

It is evident that when Mrs. Osborne first placed the papers in the hands of her sister-in-law, she did not intend to surrender her right to the possession and control of them, because, immediately afterwards, she took them back into her own hands, and assumed and exercised complete dominion over them. She next put them in a "press", an article of furniture in her own house, presumably belonging to, and used by, her. After placing the package there, she requested her relative, in the event of her illness, to take care of the papers, and, when she, Mrs. O., died, to give them to the one who settled up her estate. Both the will and the deeds were wrapped in a single package, and were together in the "press." The possession and control of Mrs. Davis over the will of Mrs. Osborne were of the same nature and extent as her possession and control over the deeds. She was not informed what the papers were. She was to take care of them in case Mrs. O. became sick. If Mrs. O. died, she was to give the package to Mrs. O's executor or administrator.

It would seem from the words and actions of Mrs. Osborne, that she expected to take care of the papers herself so long as she might be able to do so. She regarded them as valuable documents. To secure them against destruction, loss, or spoliation at a time when she was unable, on account of sickness to preserve and take care of them, she requested Mrs. Davis to perform that duty for her. When Mrs. Davis took charge of them how did she hold them? Certainly not as a trustee or agent for the grantees. She did not know what the package contained, nor that any one, excepting Mrs. O., had any interest in it. When she was authorized to take charge of the package, nothing was said to her by Mrs. Osborne which indicated that any other person than herself had any right to the contents of the package, or that she, Mrs. O., intended to relinquish her control over it. If Mrs. Davis held as trustee or agent for the grantees, and if there was a delivery of the deeds for their use, it would have been her duty to retain the deeds for the benefit of the grantees, even if Mrs. O. had demanded them from her. But, when her position in the family, and her relation to Mrs. O. are considered, it can not be supposed either that· Mrs. O. intended, or that Mrs. Davis understood, that the latter was to detain the package from Mrs. O. if the latter demanded it, or that Mrs. O. relinquished all control over its contents. In making the delivery, both the will and the deeds were included. But can it be supposed that, if Mrs. O. had desired to alter her will, or to destroy it, Mrs. Davis would have felt authorized to keep it from her? If she could not, under her instructions, keep the will, by what word or act of Mrs. Osborne was she clothed with authority to retain the deeds? What was it that Mrs. O. requested her to take care of? It was not deeds, nor a will, but a *package*. And what was she empowered to do? Simply, to take care of it if Mrs. O. should become sick, and, in the event of the death of Mrs. O. to give it to the person who should settle her estate. But what if Mrs. O. recovered

from her sickness ?   Then, surely, she would have had the right to resume the exclusive possession and control of the package.   It is clear that Mrs. Davis was to take care of the papers as the agent and servant of Mrs. Osborne, and that such agency was to continue, unless revoked, during the illness of Mrs. O.   She was not authorized to deliver the deeds to the grantees named in them.   She was to give the package, containing both the will and the deeds, to the executor of the will, or the administrator of Mrs. O.'s estate.

It does not appear that Mrs. O. was acting under legal advice, and it seems probable that she supposed she could lawfully dispose of her personal estate by will, and divide her real estate among her children by deeds to be placed in the hands of her executor or administrator.   It was doubtless her intention to reserve to herself the possession and control of the deeds so long as she lived.   Until her death, they were to remain in her home, in her "press" if she was well, in the hands of her relative if she was sick, but at all times accessible to her, and held in such a situation that she could control, alter, revoke, or destroy them.   If she had recovered, would it not have been the duty of Mrs. Davis to replace the papers in the "press", or to return them to the hands of Mrs. O. ?   Or if, during her sickness, Mrs. O. had said to her relative, "Bring me that package," was there anything in the nature of Mrs. Davis' possession, under her instructions, which would have made it improper for her to do so ?   We must conclude that Mrs. Osborne never surrendered, or intended to part with, the control of the deeds, and that, in contemplation of law, the possession of Mrs. Davis was that of an agent of Mrs. Osborne, and, therefore, the possession of Mrs. Osborne.   But if Mrs. O. retained the possession and control, then there was no delivery, and if no delivery, then the deeds were not executed for lack of it.   Had Mrs. O. requested some friend owning a safe to put her papers in it, and, after her death, to hand them over to her administrator or executor, it could not

have been understood that she thereby placed them beyond her reach, and parted with all control over them. Yet, such a disposition of these instruments would not, in legal effect, have differed from that which actually took place in this case.

The ruling English cases and some of the American decisions hold that, in the case of deeds of settlement, manual delivery of the instrument, or the equivalent of such delivery, is not indispensable. *Clavering* v. *Clavering,* 2 Vern. 473, 476; *Barlow* v. *Heneage,* Prec. Cha. 211; *Naldred* v. *Gilham,* 1 P. Wms. 577; *Boughton* v. *Boughton,* 1 Atk. 625; *Taw* v. *Bury,* Dyer, 167b; *McLure* v. *Colclough,* 17 Ala. 89; *Newton* v. *Bealer,* 41 Iowa 334; *Shirley* v. *Ayres,* 14 Ohio 307, 45 Am. Dec. 546; *Martin* v. *Flaharty,* 13 Mont. 96, 19 L. R. A. 242; *Farrar* v. *Bridges,* 5 Humph. (Tenn.) 411, 42 Am. Dec. 439.

But, in this State, the authorities are uniform that, even in the case of a voluntary deed of settlement, delivery is essential to the validity of the deed, and that it must be made either to the grantee or to some third person for his use. It follows from what has been said that the deeds which were signed and acknowledged by Mrs. Osborne were never delivered, and that they were void for that reason. The conclusions of law in this case were correctly stated by the trial court.

The motion of the appellants to modify the judgment taxing $40 of the appellee's attorney's fees to the appellants, so that no part of such fees be taxed against appellants, should have been sustained. Where parties appear by counsel, and contest a petition for partition, they should not be required to pay the fees of the attorneys of their adversary. *Bell* v. *Shaffer,* 154 Ind. 413. And to this extent the judgment should be modified. The court is directed to sustain the motion to modify the judgment as to the taxation and allowance of the fees of appellee's attorneys against the appellants, in conformity with this opinion. In all other respects the judgment is affirmed.