## PETHTEL ET AL. *v.* PETHTEL ET AL.

[No. 6,900.   Filed December 16, 1909.   Rehearing denied February 23, 1910.   Transfer denied April 19, 1910.]

1. DEEDS.—*Delivery.*—*Jury.*—Delivery is essential to the validity of a deed, and is a question of fact for the jury.   p. 667.
2. DEEDS.—*Delivery.*—*Elements.*—The delivery of a deed is largely a question of intention, but it must be manifested by words or acts, or by both.   p. 667.
3. DEEDS.—*Delivery.*—*Escrow.*—The delivery of a deed to a third person to be delivered to the grantee, must be wholly unconditional, and must be accompanied by a statement of the nature of such deed and with specific directions that it be delivered absolutely to the grantee, or for his benefit.   p. 667.
4. DEEDS.—*Delivery.*—*Evidence.*—Evidence that a grantor signed a deed conditioned upon his retention of the possession of the granted land "as he may see fit during his natural life," that he gave the deed to a third person directing that if the grantor predeceased such third person, he should give such deed to the grantee, that, at such person's request, the grantor placed such deed in the safe of a local merchant, with a direction for the merchant to keep it until the grantor called for it, and that if he did not, some one would, the merchant not knowing what the paper was, and that upon the death of the grantor, such merchant delivered it to the grantee, does not show a valid delivery, and, therefore, the deed passed no title.   pp. 668, 670.
5. WITNESSES.—*Credibility.*—*Jury.*—The credibility of a witness is a question for the jury.   p. 670.

6. EVIDENCE.—*Declarations of Grantor.—Intentions.—Deeds.—Delivery.—Husband and Wife.—*In a suit involving the delivery of a deed signed by a husband, purporting to convey all of such husband's land to certain of his children, declarations of such husband, prior to his second marriage, that he intended to execute a contract with his intended wife by which he should retain all of his property, and she should retain hers, is not competent, where no such contract was ever executed. p. 670.

7. EVIDENCE.—*Delivery of Deed.—Declarations of Grantor.—*In a suit involving the delivery of a deed, evidence that the grantor took the deed to one of the grantees and had him read it to the grantor, and that such grantee notified the other grantees thereof, is inadmissible. p. 671.

8. EVIDENCE.—*Declarations of Third Persons.—Deeds.—Delivery.—*Declarations of a third person as to the execution of a deed are inadmissible in an action contesting the delivery of such deed, p. 671.

9. EVIDENCE.—*Objections.—Specificness.—Exceptions.—*On the overruling of an objection to evidence, an exception must be reserved; and objections that the questioned testimony is immaterial, or incompetent, or that the question asked was suggestive, present no questions. p. 671.

10. TRIAL.—*Verdict.—Deeds.—Delivery.—*A general verdict against appellants who were contending that the deed in controversy was delivered, is a finding that it was not. p. 671.

11. APPEAL.—*Briefs.—Waiver.—Instructions.—*Instructions not set out in appellants' brief will not be considered. p. 672.

From Greene Circuit Court; *Charles E. Henderson,* Judge.

Suit by Sarah J. Pethtel and another against William T. Pethtel and others. From a decree for plaintiff and certain defendants, William T. Pethtel and others appeal. *Affirmed.*

*William L. Slinkard,* for appellants.

*W. V. Moffett, Cyrus E. Davis* and *Buff & Stratton,* for appellees.

COMSTOCK, J.—Sarah J. Pethtel, a childless second wife, and Mary East, a daughter by a former marriage, of William Pethtel, deceased, instituted this proceeding for the partition of certain real estate. The complaint is in the usual

form for partition, and made defendants all the children and grandchildren of said William Pethtel, alleging that the widow had a one-third interest for life in the whole of said real estate; that the other plaintiff, Mary East, and the defendants to the complaint were the owners in fee simple therein as tenants in common, and asking for partition, etc.

On December 3, 1904, certain of the defendants, severing from their codefendants, filed their cross-complaint against plaintiffs and against all other codefendants, setting out that Sarah J. Pethtel is a widow, and that all other cross-defendants were children and grandchildren of William Pethtel, deceased, and that they are the owners of the real estate in the same proportion as alleged in the complaint; that William Pethtel died seized of the lands described; that certain codefendants (appellants) have a deed for said real estate made in the lifetime of William Pethtel; that the deed never was delivered to them; that they (appellants) wrongfully placed the deed of record in the recorder's office in Greene county, Indiana (setting out a copy of the deed), and alleging that the procuring and placing of said deed of record has cast a cloud on the title of the real estate; that the cross-complainants are the absolute owners; that said deed was void and should be canceled, and praying that said deed be set aside and partition made, etc.

On February 13, 1905, appellants filed their cross-complaint against plaintiffs and their codefendants, alleging that they are the owners in fee simple of the land described in the complaint, and also described in their cross-complaint, and that they are the owners in fee simple of all of said real estate; that plaintiffs and their said codefendants claim an interest in said real estate, which interest is without right and unfounded, and a cloud upon their title, and asking that the title be quieted in them as against all of the plaintiffs and codefendants.

Issues were formed upon both the complaint and the cross-complaints by answers in general denial. Two trials were

had. The first was by the court, and a new trial was taken as of right; the second was by a jury, resulting in a general finding for plaintiffs and cross-defendants, Barbara Hudson and others, and against the cross-complainants (appellants) on their cross-complaint. Appellants' motion for a new trial was overruled, and the court appointed commissioners to make a report. To their report, appellants filed objections, which were overruled and exceptions taken. Appellants' motion for a new trial, on the objections to the commissioners' report, was overruled.

The controlling question is whether there was a delivery of the deed.

Do the facts show a delivery of the deed? Without delivery the deed passed no title to the grantees. The question of delivery is one of fact to be determined on the evidence. *Vaughan* v. *Godman* (1884), 94 Ind. 191, 194; *Fireman's Fund Ins. Co.* v. *Dunn* (1899), 22 Ind. App. 332; *Fifer* v. *Rachels* (1906), 37 Ind. App. 275. "It is much a question for the jury in each particular case." *Dearmond* v. *Dearmond* (1858), 10 Ind. 191, 195. The intention of the grantor is the controlling element constituting delivery, and while no formality need be observed, the intention may be manifested by words or acts or both; but one or the other must be present to make a good delivery.

The Supreme Court and this court have been called upon in a number of cases to decide whether a deed has been delivered. In the case of *Osborne* v. *Eslinger* (1900), 155 Ind. 351, 80 Am. St. 240, a few of them, with alleged circumstances of the supposed delivery, are collected, with citations from approved textbooks. In the course of the opinion the following rule is stated: "Where the claim of title rests upon the delivery of the deed to a third person, the deed must have been properly signed by the grantor, and delivered by him, or by his direction, unconditionally, to a third person for the use of the grantee,

to be delivered by such person to the grantee, either presently, or at some future day, or upon some inevitable contingency, the grantor parting, and intending to part, with all dominion and control over it, and absolutely surrendering his possession and authority over the instrument, so that it would be the duty of the custodian or trustee for the grantee, on his behalf, and as his agent and trustee, to refuse to return the deed to the grantor, for any purpose, if demand should be made upon him. And there should be evidence beyond such delivery of the intent of the grantor to part with his title, and the control of the deed, and that such delivery is for the use of the grantee.

"If the deed is placed in the hands of a third person, as the agent, servant, friend, or bailee of the grantor, for safe-keeping only, and not for delivery to the grantee; if the fact that the instrument is a deed is not made known to such third person, either at the time it is handed over, or at any time before the death of the grantor; if the name of the grantee, or other description of him, is not given; and if there is no evidence beyond the mere fact of such delivery of the intent of the grantor to part with his control over the instrument and his title to the land, then such transfer of the mere possession of the instrument does not constitute a delivery, and the instrument fails for want of execution." See, also *Fifer* v. *Rachels* (1901), 27 Ind. App. 654; *Stout* v. *Stout* (1902), 28 Ind. App. 502.

The evidence shows that in 1892, William Pethtel, the grantor in the deed in question, then a widower and the father of the codefendants had a notary public draw up a general warranty deed to appellants for the 180 acres of land in question. The deed contained the following provision:

"It is understood that, as a condition of this deed, the grantor is to have and hold possession of the premises and occupy and control and manage the same as he may see fit during his natural life."

One Meredith and the grantor had several times been talking about putting their "property in some shape" while they were living, and on September 1, 1892, the grantor handed the deed in question, enclosed in an envelope, to Meredith, an intimate friend, saying: "Old chum, there is them papers. And now I want you to take care of them, and if I die before you, you give them to my Tom [meaning William T.]." Meredith, after reading the first part and seeing to whom the deed was made, put it in the envelope and sealed it. At the time the deed was handed to him, Meredith was a widower. The deed remained in his possession until 1896, when Meredith had remarried, and, not getting along well with his wife, he told Pethtel that he was having trouble with his wife, and that he was uneasy about the deed, and advised him to put the deed in "Dick's" safe, meaning Richard W. Yoho, a merchant at Cincinnati, Indiana. When the grantor reached Yoho's store, Yoho and his son Clyde were present. The son testified: "Well, he gave Father an official sized envelope, and requested him to put it in the safe for safe-keeping, and he requested also that Father keep that; that he might never call for it, but if not, someone would." The father testified: "I was in my store and Mr. Pethtel handed me a package of papers and said: 'Dick, I want you to put this in the safe and take care of it.' He came right around to the safe. I was behind the counter like—behind the safe, and he came up to the corner of the safe. * * * I opened the safe and put it in. After I had opened the safe, Mr. Pethtel said: 'I may never call for this, but if I don't, some person will'—or 'somebody will—some person,' I believe was the remark."

Meredith survived the grantor, who never called for the deed. The deed remained with Yoho until the day after the death of the grantor, when it was handed by him to William T. Pethtel, who had it recorded in the proper records in the recorder's office.

In answer to the question of appellee Sarah J. Pethtel, shortly before the death of the grantor, concerning the deed, Meredith said that he "did not know anything about any deed." After the grantor's death he told about having had the deed, and explained his denial of any knowledge of the deed, by stating that when the envelope was delivered to him Pethtel told him not to tell any of his children about it.

There is no uncontradicted evidence, beyond the manual delivery to Meredith, that such deed was intended to be delivered to the grantees. Meredith testified that he read part of the deed giving the names of the grantees, but he admits he denied having any knowledge of the deed. He explains this, but it was for the jury to pass upon the credibility of his evidence. The only evidence that Meredith had any knowledge of the grantee or from which knowledge could be inferred was that he was directed to give the papers to the son Tom.

When the deed was delivered to Yoho, the language accompanying the delivery clearly indicated that the papers were deposited there for safe-keeping, and subject to the call of the grantor. This would not constitute a delivery. The action of the grantor and of Meredith tended to show that the grantor and Meredith intended that the deed should be subject to the control of the grantor, and that he had not parted with dominion over it. While if the placing of the deed in the first instance with Meredith was a delivery of the deed which the retaking and depositing with Yoho would not annul, yet it was a circumstance in determining the question of intent that the jury had the right to take into account in arriving at a verdict.

It is insisted by appellants that competent testimony offered by them as follows was erroneously excluded. They offered to prove by witness Jacob Neal that William Pethtel before his marriage told the witness that he and his intended wife were going to come to Bloom-

field and make a marriage contract, by which each was to retain his or her own property for his or her own children.

It is argued that in view of the fact that the widow was claiming one-third interest for life in the real estate, this evidence was competent to show that she should have had no interest in this controversy. As it is admitted that no such contract had ever been found, and so far as the evidence shows no such contract was ever entered into, we think there was no error committed.

7. Appellants offered to prove by witness William T. Pethtel that the same day this deed was made his father brought it to him and had him read it over to him, and that he notified the other grantees in the deed. This evidence was properly excluded.

8. Jacob Floyd testified that he told William T. Pethtel about the deed. The court struck out this testimony. In this there was no error. Floyd was also asked what the grantor said to him about making the deed, and why he was going to make it. This evidence was admitted.

9. The court permitted the witnesses John R. Combs, Andy Combs and John Wilbur to tell about a conversation had with the grantor in 1896 or 1897, about making the deed. As to the testimony of Wilbur no exception was reserved. As to the others, the objections made are that the testimony is immaterial, that the question was suggestive and incompetent. These objections present no question.

10. Upon the first trial a special finding of facts was made. They are not brought here upon this appeal, so that the particular grounds upon which the judgment of the court was based is not shown. Upon the second trial, the general verdict found for plaintiffs upon all the issues and against the cross-complainants. It is therefore a finding against the delivery of the deed. All other questions are subsidiary to this one controlling question.

We have considered the question arising on the evidence, argued. The instructions are neither set out nor argued in appellant's brief, nor is the substance thereof set out.

11. Upon the whole record we find no reversible error.

The same conclusion having been reached in two trials and before different tribunals, supports the proposition that the verdict is fairly sustained by the evidence.

Judgment affirmed.