PHILLIPS v. HENRY et al.

(Court of Civil Appeals of Texas.   Feb. 23, 1911.   On Motion for Rehearing, March 16, 1911.)

1. WILLS (§ 88*)—DEED AS MODE OF TESTAMENTARY DISPOSITION.

An owner of land cannot make a deed, not possessing the formalities of a will, and retain its custody and have it operate as a conveyance only at or after his death; nor can he effect such a result by simply depositing the deed with a third person, if he continues to have the right to recall it.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 208–217; Dec. Dig. § 88.*]

2. DEEDS (§ 58*)—DELIVERY—TO THIRD PERSON.

The act of a grantor in delivering a deed in an envelope indorsed "T. J. P.," or "Mrs. M. H. and Miss J. K.," to a bank cashier with the statement, "Here is a deed to Miss J. K. and Mrs. P. H. that I want to lay away in the vault for safe-keeping, and the deed to be delivered after my death to them," showed an intention to reserve a right in the grantor to recall the deed during his lifetime, and that, if he should die without having exercised the right, it should be delivered to the grantees after his death; and therefore there was no present delivery to the grantees.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 130–135; Dec. Dig. § 58.*]

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Action by W. H. Phillips, administrator, against Pat Henry and others. From a judgment for defendants, plaintiff appeals. Reversed, and judgment rendered for plaintiff.

See, also, 124 S. W. 184.

S. F. Leslie and Richard B. Semple, for appellant.   McGrady & McMahon and Thos. P. Steger, for appellees.

WILLSON, C. J.   This case has once before been before this court, on an appeal prosecuted, as this one is, from a judgment in favor of appellees, defendants below. A statement showing its nature will be found in 124 S. W. 184, where the first appeal is reported.

The testimony on the last trial was not different in any material respect from that on the other trial. Its sufficiency to make an issue as to whether Patillo at the time he delivered the deed to Simpson intended to finally part with all control over it or not is the main question presented. The deed was dated May 9, 1905, and its execution was duly acknowledged by Patillo on the same day. It was as follows: "Know all men by these presents, that I, T. J. Patillo, of the County of Fannin, State of Texas, for and in consideration of the sum of $25.00 to me in hand paid by Mrs. Mary Henry, wife of Pat Henry, and Miss Josephine Kearnes, the receipt of which is hereby acknowledged, and the further consideration of the love and affection I have for the said Mary Henry and Josephine Kearnes, they being my step-daughters, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Mrs. Mary Henry and Miss Josephine Kearnes, of the County of Fannin, State of Texas, all that certain tract or parcel of land situated on the waters of Caney Creek in Fannin County about 10 miles northwest of Bonham (and further describing the land in controversy).   Mrs. Mary Henry is to have an undivided two-thirds in the whole of the above described land and Miss Josephine Kearnes the other one-third undivided interest."   "Some time in the spring of 1905," a sealed envelope, afterwards found to contain the deed, with the words "after 10 days return to Pat Henry, county clerk, Fannin county, Bonham, Texas," printed on the "left-hand top" thereof, and indorsed in Patillo's handwriting "T. J. Patillo or Mary Henry and Miss Josephine Kearnes," was delivered by Patillo to Simpson, then the cashier of a bank at Bells, Tex.   Simpson was the only witness who testified as to the circumstances accompanying the delivery to him of the deed.   His testimony, so far as material, was as follows: "I never saw the deed from T. J. Patillo to Mrs. Mary Henry and Miss Joe Kearnes, but as I remember Mr. T. J. Patillo handed me a large envelope, saying that it contained a deed of some land to Miss Joe Kearnes and Mrs. Pat Henry.   I never delivered the deed to anybody.   I was acquainted with the said T. J. Patillo.   I received the envelope in which Mr. T. J. Patillo told me there was a deed, from him, the said Patillo, as cashier of the bank, for safe-keeping.   I received the envelope from Mr. T. J. Patillo, in which he said there was a deed, some time in the spring of 1905, but I do not remember the exact date.   I was at that time cashier of the First National Bank at Bells, Tex.   There are so many papers put in the bank for safe-keeping it is impossible just what each and every one person says when they leave the papers.   I cannot state the exact words; but I believe I am correct when I say that he said: 'Simpson, here is a deed of some land to Miss Joe Kearnes and Mrs. Pat Henry that I want to lay away in the vault for safe-keeping, and the deed to be delivered after my death to them.'   I do not remember that he said anything about reserving any right to recall the deed."   In the latter part of August, 1905, Patillo au-

thorized the witness Springfield, a real estate agent, to sell the land for him, and frequently thereafterwards talked with said Springfield about the prospect of effecting a sale thereof. In the spring of 1906 the witness Dover proposed to buy a part of the tract. Patillo declined to sell him a part, but offered to sell him the entire tract. Patillo died September 13, 1906. About September 15, 1906, the envelope containing the deed was delivered by the witness Blanton, who had succeeded Simpson as cashier of said bank, to Mrs. Mary Henry, who had same spread upon the records of Fannin county. It was shown that Patillo spoke of the grantees named in the deed as his daughters, and was very kindly disposed toward them. It was further shown that in the spring of 1906, in reply to a letter written to him by a daughter of Mrs. Mary Henry, in which she stated that if she should ever want to live in the country she would like to live in the home place on the land in controversy, he wrote to her saying that he was an old man and didn't expect to live long as his health was failing him, and that he had arranged his business so that if her father wanted to live in the country they could live at said place.

We are of the opinion that when the testimony recited, which is all there is in the record material to the question, is considered with reference to the rules of law controlling in such cases, it must be said that it did not make such an issue, and that the trial court should have instructed the jury to find against the contention made that the delivery of the deed by Patillo to Simpson had the effect to pass the title to the land to the grantees named in it.

The clearest statement we have seen of the rules of law applicable to the facts of the case is that made by Mr. Warvelle in his work on Vendors. After discussing generally rules applicable where the deed is delivered to a third person for the grantee, he says, in sections 501 and 502, vol. 1, of his work: "Closely connected with the subject discussed in the preceding paragraph is the character to be given instruments left with a third person to hold until the death of the grantor, and then to be delivered to the grantee. Notwithstanding some of the earlier decisions to the contrary, the current of later authority seems to establish the doctrine that, where the grantor reserves no privilege of revoking or recalling the deed, its legal effect is that of an escrow, which, upon the happening of the contingency of death, relates back to the first delivery and becomes effective to convey the grantor's title. The reasoning upon which these deliveries have been supported has not always been the same; indeed, they are very diverse; but the conclusions arrived at all sustain the doctrine that, when a grantor places in the hands of a third party his written deed with instructions to hold until the grantor's death and then deliver it to the grantee, if such deposit is made with no other condition or reservation, and if the grantor by such act absolutely parts with all control or dominion over it, with no right to recall it or alter its provisions, or to have or enjoy any other or further interest in the lands conveyed than to hold the use thereof until after his death, a valid delivery is established when consummated by the final act of transference to the grantee. The essential requisite in such a case seems to be that when placed in the hands of the depositary the instrument shall at once pass beyond the control of the grantor for all time, and his intention in the matter is a question of fact, to be ascertained by the light afforded by all the circumstances surrounding the transaction. The general theory involved in the discussions of the foregoing conclusions seems, in the main, to be that the grantor, in effect, by the absolute delivery to the depositary, converts his estate into a life tenancy; the remainder in fee vesting in the grantee. There is some confusion in the reported cases as to when the deed takes effect, but, while some hold that it becomes operative only upon the delivery by the depositary after the death of the grantor, such second delivery relating back to the first so as to divest title, the better and more logical rule passes the title, full and complete, upon the first delivery. Indeed, any other rule infringes upon the law relating to devises and produces an incongruity that is difficult to reconcile with the settled principles which govern the disposition of property by deed and will. The question usually raised in matters of the kind discussed in the preceding paragraph is one of construction; the point to be decided being whether the instrument is to be considered as a deed or a will. It is well established that neither the form nor manner of execution of an instrument will affect its character, as this must be determined from its operation. If it takes effect in præsenti, it is a deed; if, on the other hand, it does not become operative until the death of him who makes it, it is a will, whatever be its form. Thus a deed, if made with a view to a disposition of a man's estate after his death, will inure in law as a devise or will. A deed must take effect on its execution, or not at all. Again, a deed, when once passed, cannot be revoked; a will remains ambulatory to the day of the testator's death. Applying these principles, the character of instruments under consideration can soon be determined. If the delivery to the depositary be absolute, the grantor surrendering all power or control over the instrument, effect should be given to it as a deed of conveyance. But a party cannot make a deed for land and retain its custody, and have it operate as a conveyance only at or after his death; nor can he effect such a result by simply depositing the deed with a third person, if he continues to have the

right to recall it; and in such event, even though he dies without recalling it, a delivery by the depositary to the grantee would be without effect."

That the law is as Mr. Warvelle states it to be is shown by cases he cites, and others. See Griffis v. Payne, 92 Tex. 295, 47 S. W. 973; Shults v. Shults, 159 Ill. 654, 43 N. E. 800, 50 Am. St. Rep. 188; Wilson v. Wilson, 158 Ill. 567, 41 N. E. 1007, 49 Am. St. Rep. 176; Osborne v. Eslinger, 155 Ind. 351, 58 N. E. 439, 80 Am. St. Rep. 240; Mudd v. Dillon, 166 Mo. 110, 65 S. W. 975; Pethel v. Pethel (Ind. App.) 90 N. E. 102. And see, also, Tiedeman on Real Property (3d Ed.) §§ 578, 579; 9 A. & E. Ency. Law (2d Ed.) page 157, and the authorities there cited. It will be observed that the test the law indicates as the proper one to be applied in a case like this one is: Did the grantor at the time he delivered the deed to the depositary intend to finally and forever part with all control over it? It is clear, we think, that the testimony recited above not only did not tend to show Patillo to have had such an intention, but, on the contrary, conclusively showed that he intended during his lifetime to retain control over the deed. This is indicated, we think, by the indorsement he made on the envelope containing the deed, when same is considered, as it should be, in connection with his statement made at the time he delivered the deed to Simpson, the cashier of the bank. The indorsement was: "T. J. Patillo or Mrs. Mary Henry and Miss Josephine Kearnes." The statement to Simpson was: "Here is a deed of some land to Miss Joe Kearnes and Mrs. Pat (Mary) Henry that I want to lay away in the vault for safekeeping, and the deed to be delivered after my death to them." Reasonably, the only meaning which can be given to this testimony—and it is not disputed by any other testimony in the record, but is consistent with all of it—is that Patillo intended to reserve in himself a right to recall the deed during his lifetime, and, if he should die without having exercised the right, that it should be delivered to Mrs. Henry and Miss Kearnes after his death. Had the envelope containing the deed been delivered to Simpson without any other explanation or further instruction than that furnished by the indorsement thereon, Simpson clearly would have been authorized, on Patillo's demand for it, to have returned the deed to him, or, on their demand for it, to have delivered it to Mrs. Henry and Miss Kearnes. Had the deed, under such circumstances, been delivered by the depositary to the grantees during the lifetime of the grantor, we are not prepared to say such a delivery would not have operated to pass the title to such grantees. It was not so delivered, however, and without violating the further instructions given

by Patillo it could not have been so delivered. For the effect of those instructions was, we think, to deny to Simpson authority during his (Patillo's) lifetime to deliver the deed to any other person than himself. Those instructions were entirely consistent with, and we think should be regarded as confirmatory of, the existence of an intent on the part of Patillo, as evidenced by the indorsement, to reserve in himself a right to recall the deed at any time before it should be delivered by Simpson to the grantees. Therefore it appeared—conclusively, we think—that Patillo did not intend to part absolutely with control over the deed, but, on the contrary, intended during his lifetime to retain control over it. It was not pretended that the instrument had been so executed as to become effective as a will.

Therefore, and because it was not so delivered as to operate as a deed, the judgment should have been in favor of appellant as administrator. It will be reversed, and a judgment in his favor as prayed for in his petition will be here rendered.

### On Motion for a Rehearing.

Since the motion was filed, we have reconsidered the testimony in the record. and adhere to the conclusion reached before, that as a matter of law it was not sufficient to support the verdict and judgment. In the opinion disposing of the appeal, referring to the testimony of Mrs. Henry's daughter, it was stated that Patillo "wrote to her, saying he was an old man, and didn't expect to live long, as his health was failing him, and that he had arranged his business so that if her father wanted to live in the country they could live at said place." In the motion it is asserted that the testimony of the witness was misconstrued, that her statement was as follows: "So he wrote me and told me * * * that he was an old man, and didn't expect to live long, and that his health was failing him, and he had arranged his business so that if my father wanted to live in the country so that we could live there." The language of the witness was as appellees in the motion assert it to have been. We do not think its meaning was wrongly construed in the opinion.

The motion is overruled.