— SMITHSON v. BOUSE ET AL.

[No. 10,045.   Filed March 12, 1918.]

1. DEEDS.—*Delivery.*—*Evidence.*—*Deposit in Safety Deposit Box.*— Where decedent executed a deed to his daughter and placed it, together with other papers, in a safety deposit box, without any explanation as to the nature of the papers and without giving any direction as to their disposition, and he received the only key which would open the box, when used in conjunction with the bank's master key, there was no delivery of the deed and it was ineffective to convey title, since it remained in the possession and under the control of decedent.  p. 72.

2. DEEDS.—*Delivery.*—*Evidence.*—Evidence of decedent's declarations of his intention to give certain lands to his daughter is insufficient to establish the delivery to the daughter of a deed conveying such land.  p. 75.

3. DEEDS.—*Delivery.*—To constitute a delivery of a deed it must pass under the power of the grantee, or some one for his use, with the consent of the grantor.  p. 75.

4. DEEDS.—*Delivery.*—*Necessity.*—*Intention to Convey.*—*Materiality.*—A daughter of a decedent cannot recover land by virtue of her father's undelivered deed to her, although the evidence may clearly show that it was decedent's intention to give her the land in question.  p. 76.

5. QUIETING TITLE.—*Action Predicated on Deed.*—*Evidence.*—In an action to quiet title in decedent's daughter, who claimed ownership under a deed from her father, receipts from other children of decedent wherein they acknowledged that they had received and accepted certain property from their father in full of their share of the real estate then owned, or which might thereafter be acquired, was properly excluded as being immaterial.  p. 76.

From Wells Circuit Court; *William H. Eichhorn,* Judge.

Action by Ella Dawley Smithson against Bertha Bouse and others.

From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*Abram Simmons* and *Charles G. Dailey,* for appellant.

*Frank W. Gordon* and *L. B. Simmons,* for appellees.

BATMAN, P. J.—This is an action by appellant against appellees to quiet title to real estate. The complaint is in three paragraphs. In the first paragraph appellant bases her action on a legal title. In the second paragraph she bases her action on an equitable title. In the third paragraph she bases her action on a legal title acquired by a certain deed executed to her by one Horace Dawley. The appellees, other than Francis M. Reynolds, filed an answer in general denial, and the latter filed a disclaimer. The case was tried by the court without the intervention of a jury, and judgment was rendered against appellant, and in favor of appellees for costs. Appellant filed a motion for a new trial on the grounds that the decision of the court is not sustained by sufficient evidence and is contrary to law, and that the court erred in excluding certain evidence. Appellant has assigned errors by which she challenges the action of the court in overruling her motion for a new trial.

On the trial it was admitted that one Horace Dawley was the owner of the real estate in question on December 23, 1913. Appellant claims to be the owner of the same by virtue of a deed of that date, executed to her by said Dawley. The preparation, signing and acknowledging of such a deed is not denied by appellees, but they claim that the same was never delivered, and base their defense on such fact. This requires a consideration of the evidence, as the delivery of such deed is the vital question in the determination of this appeal. The only evidence on the trial of the case was introduced by appellant and was,

in effect, substantially as follows: Appellant and her sister, Arla Miles, were the daughters of one Horace Dawley. He was also the father of certain of the appellees. On December 23, 1913, he was the owner in fee simple of a certain 200-acre tract of land in Wells county, Indiana. On said date he went to the home of William Bloxsom, a neighbor, and had him prepare two deeds, one describing eighty acres of said tract, and naming appellant as the sole grantee; and the other describing the remaining 120 acres of said tract, and naming her sister, Arla Miles, as the sole grantee. At that time he stated in substance that he wanted to make deeds to Ella and Arla for this farm; that he wanted the girls to have the land; that he wanted them to have the deeds, and wanted Mr. Bloxsom to write them; that he wanted to change his will a little bit; that the two girls wanted the land in place of the money; and that he wanted Ella to get the eighty acres and Arla the 120 acres. He asked Mr. Bloxsom, if he thought the buildings on the eighty acres would make up the difference in values between the two tracts, and was told that he believed that they would. Mr. Bloxsom also prepared a will for Mr. Dawley at the same time. Prior to the preparation of such deeds he stated that he was going over to Mr. Bloxsom's to make a deed to Ella and Arla; that he had only given them a house in Montpelier, while he had given the other girls a farm apiece; and he thought he would give Ella the north eighty acres and Arla the 120 acres. After the deeds were prepared he stated that he had made the deeds to Ella and Arla to the farm, and that he wanted the girls to have the deeds. Later, in speaking of his will, he said: "I believe I have got mine so it is divided among the children alike. Some has more land than others, and

others has got money.'' A short time before his death he stated that he had given some property to his other children, but he had never given Ella and Arla anything; that he intended to give them the land, the eighty acres to Ella and the 120 acres to Arla, in order to make his children equal; that he had given certain of his children their land, and that he intended to share them equally as nearly as he could. In December, 1913, he took such deeds and will to an attorney, where they were examined, and his signatures to the deeds were acknowledged before a notary public, and his signature to the will was witnessed. On this occasion he stated that the papers were as he wanted them; that he was going to Florida and wanted everything fixed properly so he would not be bothered with them again, and if anything happened there would be no trouble of any kind; that the other children had been provided for; that he had given them property and money; that Ella and Arla had not received to his notion as much as the others, and that he wanted them to have the property deeded to them to make them equal with the others. He said: ''Of course, I want to have support for myself as long as I live. I want to have some income of my own, but after I am gone I want them to have it.'' He directed his attorney to indorse something on an envelope, so if anything should happen they would know what should be done with the papers. His attorney then wrote on an envelope, ''Deeds to Ella (Dawley) Smithson and Arla (Dawley) Miles. Each deed reserving a life interest to Horace Dawley. Will of Horace Dawley,'' placed said deeds and will therein, and suggested that he put them in the bank where his daughters would be sure to get them. He said he would do so, and later took said deeds and will to the First Na-

tional Bank at Montpelier. They were then in a
package with other papers three or four inches thick,
and tied with a string. He told Mr. Stewart, its
cashier, that he was going on a visit, and had some
papers he did not care to leave at the house, and
wanted to know if they had a place to keep them.
He said they might be burned or stolen if they were
left at the house. Mr. Stewart informed him that
they had a place for such papers, and rented him a
safety deposit box in the vault of the bank as a cus-
tomer. It was one of a number of such boxes kept by
the bank for such purpose. The package containing
such deeds, will, and other papers was then placed
in such box. The box was then locked and the only
key thereto was given to Mr. Dawley. There had been
another key to the same, but it was lost. There was
a guard or master key kept by the bank. The safety
deposit box was in a vault upon which there was a
combination lock, which was solely under the control
of the bank. Mr. Dawley could not get into the box,
although he was inside the vault, without first getting
the guard or master key of some one in the bank.
After the box was locked Mr. Dawley took the key
away with him and the box was never opened until
after his death. While he had this key there was no
means by which any member of the bank could have
opened such box, except by breaking the lock. Dur-
ing the time the papers were in the box, Mr. Dawley
never asked for any of the contents of the box, or
requested a key to get into it. He left shortly after-
wards on a visit, but later returned to his home. At
the time the papers were placed in the box he dealt
with Mr. Stewart, the cashier. He did not examine
the package, and did not know what it contained. He
had no knowledge that the deeds and will in question

were among them. The papers were never taken out of the box during the lifetime of Mr. Dawley. The first time such cashier saw the package of papers after it was placed in the box was when one of the children of Mr. Dawley came to the bank after his death. He opened the box at their request and found the deeds and will in the envelope, bearing the indorsement placed thereon by Mr. Dawley's attorney, in the package with the other papers. The administrator of the estate of Horace Dawley subsequently requested the papers, and they were turned over to him by the bank. After the papers were placed in the bank Mr. Dawley stated to its president in a general conversation at a blacksmith shop, in answer to a question why he had not given Mrs. Miles a division, that he had made her a deed, and "it is now in your bank." He also stated what property he had given his other children; that it was his intention to treat his children all alike; that he gave Ella and Arla a part of the home farm and that their deeds were "now in your bank." One of the witnesses testified that Mr. Dawley stated to him that he had made deeds to the girls and had put them in the vault in the Farmers' Deposit Bank at Montpelier; that he had figured everything up in his mind to make his children equal; that he did not want to give one more than another; that after he made these deeds he gave to his other children $500 each to put them on an equality. When the witness asked how the girls were to get these deeds in the bank, Mr. Dawley answered, in effect, that he had appointed an administrator, and when they opened the vault he was to give them the deeds, or they could pick them up, if they were there when the vault was opened, as the deeds were made for them and they were the only ones who had a right

to them. The deeds, will, and indorsed envelope were also in evidence. Said will made no disposition of said 200-acre tract of land, and named no residuary legatee, but contained, among others, the following provision:

"Item 3. I hereby authorize and appoint my executor to sell the ninety acres of land, in section thirty-two in Nottingham township undisposed of by deed and from the proceeds to give to my beloved son, N. W. Dawley, one thousand dollars and divide the remainder among the following, to-wit: Anna Whitlock, Dora Sarber, N. W. Dawley, Arlie Miles, Ella Smithson and Minnie Swigert equally share and share alike."

This was substantially all the evidence given on the trial.

It is practically agreed by the parties that before a deed becomes effective to convey title to real estate it must be delivered. The real contention

1. arises over the application of the law in that regard to the facts proved. In the case of *Osborne* v. *Eslinger* (1900), 155 Ind. 351, 58 N. E. 439, 80 Am. St. 240, the question under consideration was well considered. In the course of the opinion the following rule is stated: "Where the claim of title rests upon the delivery of the deed to a third person, the deed must have been properly signed by the grantor, and delivered by him, or by his direction, unconditionally, to a third person for the use of the grantee, to be delivered by such person to the grantee, either presently, or at some future day, or upon some inevitable contingency, the grantor parting, and intending to part, with all dominion and control over it, and absolutely surrendering his possession and au-

thority over the instrument, so that it would be the duty of the custodian or trustee for the grantee, on his behalf, and as his agent and trustee to refuse to return the deed to the grantor, for any purpose, if demand should be made upon him. And there should be evidence beyond such delivery of the intent of the grantor to part with his title, and the control of the deed, and that such delivery is for the use of the grantee.

If the deed is placed in the hands of a third person, as the agent, servant, friend, or bailee of the grantor, for safe-keeping only, and not for delivery to the grantee; if the fact that the instrument is a deed is not made known to such third person, either at the time it is handed over, or at any time before the death of the grantor; if the name of the grantee, or other description of him, is not given; and if there is no evidence beyond the mere fact of such delivery of the intent of the grantor to part with his control over the instrument and his title to the land, then such transfer of the mere possession of the instrument does not constitute a delivery, and the instrument fails for want of execution.'' Applying this rule to the undisputed facts, we are forced to the conclusion that the evidence fails to establish a delivery of such deed. The evidence shows that after the deed had been prepared and acknowledged, it was placed in an envelope with the deed to Mrs. Miles and will of Mr. Dawley; that such envelope with its contents was placed with other papers, and tied together with a string, making a package three or four inches thick; that such package was taken by Mr. Dawley to the First National Bank of Montpelier, where he rented a safety deposit box in its vault; that he placed or caused such package to be placed in such box for safe-

keeping; that such box was then locked, and the key thereto was given to Mr. Dawley; that he retained such key until his death; that said bank had a guard or master key for the boxes in such vault, but such key alone would not unlock such box; that no one could open the box rented to Mr. Dawley, in the absence of the key given to him, without breaking the lock to the same. It thus appears that such deed was not placed in the possession of said bank. It had no control over it for any purpose. True, the box was in the vault of the bank, and the bank had a guard or master key thereto, but the contents of the box remained in the possession and under the control of Mr. Dawley. It is evident that he had a right of access to such box, and to the use of the guard or master key thereto, at any seasonable time. He had the only key which opened the box, in connection with the guard or master key, and had a right to remove its contents at his pleasure. Under such circumstances the bank merely rented him the box and furnished protection for the same by means of its vault, and guard or master key, without exercising or having the right to exercise any control over its contents. Moreover, it should be noted that when Mr. Dawley took such package to the bank he made no explanation of the nature of any of the papers which it contained, and gave no directions as to their disposition. He stated that he was going away on a visit and wanted to leave them there until he came back, giving as his reason that they might be burned or stolen if left at his house. The evidence fails to show that he ever gave any directions to any one at any time for the disposition of such package, or any paper it contained. The facts indicated clearly sustained the conclusion we have reached.

It will be observed that much evidence was introduced on the trial, consisting principally of Mr. Dawley's declarations on the subject, to prove his intention to give the land in question to appellant, but such evidence does not establish the delivery of such deed. As was said in the case of *Fifer* v. *Rachels* (1901), 27 Ind. App. 654, 656, 62 N. E. 68, 69: "Evidence of one's intention to give certain lands to certain persons, and evidence of the intent to deliver a deed of conveyance, are widely different. The grantor undoubtedly intended that the grantees named in the deed should have the land, but evidence to establish that intention is of little value as going to establish the intention to deliver a deed of conveyance." The case of *Walls* v. *Ritter* (1899), 180 Ill. 616, 54 N. E. 565, is to the same effect.

Appellant has stated a number of propositions, and cited authorities to support the same, in an effort to show that the evidence established a delivery of the deed in question. The propositions stated, as a rule, are correct, and no doubt were applicable to the varying facts and circumstances of the cases decided, but none which can be accepted as authority in this state in any way impair the well-established rule that to constitute a delivery of a deed it must pass under the power of the grantee, or some one for his use, with the consent of the grantor. *Vaughan* v. *Goodman* (1884), 94 Ind. 191; *Anderson* v. *Anderson* (1890), 126 Ind. 62, 24 N. E. 1036; *Pethtel* v. *Pethtel* (1909), 45 Ind. App. 664, 90 N. E. 102; *Tansel* v. *Smith* (1911), 49 Ind. App. 263, 93 N. E. 548, 94 N. E. 890; *Stout* v. *Stout* (1901), 28 Ind. App. 502, 63 N. E. 250; *Emmons* v. *Harding* (1903), 162 Ind. 154, 70 N. E. 142, 1 Ann. Cas. 864; *Kokomo Trust Co.* v. *Hiller* (1917), *post* 611, 116 N. E. 332. The

evidence fails to show that Horace Dawley ever parted with the possession of such deed, or that it ever passed under the control of appellant, or any one for her use. This leaves one of the essential elements of the execution of such deed unsupported by the evidence. Appellant, therefore, cannot recover by virtue of such deed, although the evidence may clearly show that it was her father's intention to give her the land in question.

Appellant also predicates errors on the action of the court in refusing to permit the introduction of exhibits Nos. 5, 6, 7, and 8 in evidence. These exhibits are not uniform in the language used, but all in effect purport to be receipts from certain of the children of the said Horace Dawley, wherein they acknowledge that they have received and accepted certain property from their father, in full of their share of the real estate then owned, or which might thereafter be acquired by him. The subject-matter of these receipts was immaterial on the theory on which the case was presented and determined, viz., that appellant was the owner of the real estate in question by virtue of a deed from Horace Dawley. Had the case been tried on the theory that appellant was the owner of an undivided portion of such real estate by inheritance from her father, the exclusion of such evidence would have presented a different question, but as such theory was not involved on the trial of the cause, no such question is presented here for our determination. We therefore conclude that there was no error in excluding such exhibits.

It is apparent from the evidence that it was the intention of Horace Dawley to give appellant the real estate described in her complaint, and that he fully

believed that he had done everything that was necessary to convey the same to her by the deed in question. The equities, therefore, appear to be strongly in her favor, but we can only determine the questions involved in this appeal, and leave the parties to such other remedies as are available. It is evident that the only question submitted to and determined by the trial court relating to the real estate in controversy was as to appellant's ownership by virtue of the alleged deed from Horace Dawley. No other question in that regard is presented by this appeal, and we have limited our decision to a determination of that question. We have expressly held that appellant did not acquire title to said real estate by virtue of such alleged deed, but in so doing we do not mean to imply that she has no interest of any kind therein. This decision, therefore, must not be construed to be an adjudication of any interest in such real estate, which may have been acquired by any of the parties, as heirs or legatees of said Horace Dawley, or a determination of any question affecting the extent of such interest by reason of any advancements made to any of the parties to this proceedings.

We find no error in the record. Judgment affirmed.

NOTE.—Reported in 118 N. E. 970. Deeds: delivery, 16 Am. Dec. 39, 58 Am. Rep. 289, 53 Am. St. 537; possession by grantor at his death as negativing delivery, 44 L. R. A. (N. S.) 528. See under (1) 13 Cyc 562.