Thomson, J.
This proceeding was instituted by the appellant against the appellee to remove a cloud from a title which she claimed in certain real estate situate in the city of Denver, caused by the levy of a writ of attachment upon the property in an action wherein the appellee was plaintiff, and John W. Knox, the husband of the plaintiff, defendant, which attachment had been sustained by the judgment of the court. The defendant admitted the attachment and the judgment, denied ownership in the plaintiff, and averred that the land was attempted to be conveyed to her by her husband for the purpose of cheating and defrauding his creditors, of whom the defendant was one. The prayer of the answer was that the alleged title of the plaintiff be adjudged to be subject to the attachment lien of the defendant. The court rendered a decree according to the prayer of the answer, a.nd the plaintiff appealed.
Two questions are discussed by counsel: First, whether the transaction by which John W. Knox sought to invest his wife with title to the property was fraudulent as to his creditors ; and, second, whether the title had vested in her before the levy of the writ.
1. Knox was indebted to the plaintiff for money which she had loaned him upon his promise of repayment. The money was derived from property which he had given her a number of years before the transaction in question, and while he was free from debt. His business enterprises had been unsuccessful, and he was deeply involved, — in fact, insolvent. Realizing his financial condition, he executed and caused to be recorded two deeds purporting to convey to the plaintiff the real estate afterwards levied upon, in partial discharge of his indebtedness to her. He also executed deeds to others of his *359 creditors for the purpose of discharging his debts to them. This record discloses nothing to impeach his good faith in any of these transactions. He had the right to prefer-creditors. His wife, as a creditor, was upon the same footing with the others, and the fact that he made deeds to her in consideration of a portion of the amount which he owed her, does not afford the slightest ground for impugning either his motives or those of the plaintiff.
2. The disposition of the second question is more difficult. The facts are these: In 1885, the plaintiff loaned her husband a large sum of money. He gave her no note or other evidence of the debt, until 1890, when the interest was calculated and added to the principal, and a note made to her by him for $48,500, — the sum total. When she received this note she seems to have turned it over to him for safekeeping, and it was never afterwards in her personal possession. Mr. Knox never talked with his wife about his business affairs. His reason was that she was an invalid, and he did not wish to worry her. She had implicit confidence in him, and did not trouble him with inquiries. However, in 1895, for some cause she became uneasy, and asked him to deed property to her sufficient to pay the debt. It does not appear that he agreed to do so. He testified that he intended to make her a conveyance in payment of her claim, but there was no evidence that he ever acquainted her with his intention. On the 1st day of August, 1895, Mr. Knox subscribed and acknowledged a deed to her of certain lots in Denver for an expressed consideration of $30,000; and on the 24th day of December, 1895, he subscribed and acknowledged another deed to her, of other lots in Denver, for an expressed consideration of $9,500; On the day of the signing of the last deed, he sent both deeds by his attorney to the recorder’s office for record. They were recorded and returned to his attorney on the 18th day of February, 1896. The attorney then delivered them to him, and soon afterwards he gave them to the plaintiff. The first time she ever saw them was when she received them from her husband; and until that time she *360 did not know that the property which they described had been conveyed to her. She testified that she knew her husband was going to deed property to her, and testified again that she knew of the deeds ; but she did not give the source of* her knowledge, and was unable to state how soon after their execution she became aware of their existence. Oii the 24th day of December, 1895, Mr. Knox signed a note payable to the plaintiff thirty days after date for $20,866.32. It seems that the amount, principal and interest, of the note given in 1890, had been estimated or figured at about $60,366, and that the note of December 24, was intended to represent the balance, after deducting from that amount the sums named, as consideration, in the deeds. The plaintiff had this last note at the trial; but at what place it was made, or how or when it came into her possession, nowhere appears. The evidence, however, makes it clear that this note was not the result of a settlement between herself and her husband.
It is essential to the validity of every deed or conveyance that it be accepted by the grantee. It has been said that where the deed is manifestly for the benefit of the grantee, its acceptance will be presumed; but the presumption obtains only where the facts are unknown. Where those and the attendant circumstances are shown, the question must be determined from them; there is no room for presumption. Where a deed is made and delivered to a stranger for the use of the grantee upon its acceptance by the latter, as between the grantor and him, the acceptance will relate back to the time of the first, delivery. So far as we know, it has been always so held where the question was between the immediate parties. But the relation is a legal fiction, and there is no actual transfer of the title until the acceptance. Until that time, the meeting of minds essential to a contract does not occur. It necessarily follows that if between the date of the deed and its acceptance, rights of third parties attach to the property, those rights will be superior to, and prevail over, the title of the subsequently assenting grantee. The latter takes the title subject to such liens as have been created, or conveyances as *361 liave been executed, before it becomes actually vested in him. Decisions are in existence which, apparently, are not in harmony with the foregoing statement; but it is supported by the great weight of authority. Welch v. Sackett, 12 Wis. 270; Hibberd v. Smith, 67 Cal. 547 ; Cravens v. Rossiter, 116 Mo. 338; Samson v. Thornton, 5 Met. 275; Bell v. Farmers' Bank, 11 Bush. 34; Hawkes v. Pike, 105 Mass. 560 ; Hulick v. Scovil, 4 Gilm. 159; Parmelee v. Simpson, 5 Wall. 81; Tuttle v. Turner, 28 Tex. 759; Groom v. Cotton Co., 15 Tex. Civ. App. 328 ; Devlin on Deeds, §§ 276, 291.
The question, what constitutes an acceptance by the grantee, is not in all cases free from difficulty. It cannot arise where the execution and delivery of the deed is the conclusion of a transaction conducted by the immediate parties. Nor is it involved where the deed is executed in performance of the grantor’s contract with the grantee to convey the land to the latter. In such case, the deed is the consummation of the contract, and the contract contains the assent of the grantee to its execution, so that it is immaterial whether he had personal knowledge of the deed at the time it was made or not. The difficulty arises where one party undertakes to make a conveyance to another without the latter’s knowledge, and without any previous understanding that the act should be done. The filing of the deed by the grantor for record, does not of itself, constitute a delivery. If the recorder is the agent of the grantee to receive the deed, then, of course, his acceptance would be the act of his principal. But where the latter has no knowledge that such an instrument was contemplated, or that it was made, he can have no agent to receive it; and until, after acquiring knowledge of its existence, he in some way signifies his approval of the act, there is no delivery of the deed. There is no particular form or mode by which the assent must be manifested; but it must appear that, in some manner, with knowledge of what has been done, he indicate his purpose to take the benefit of the conveyance.
In this case there was no previous agreement or under *362 standing between the” plaintiff and her husband that he would give her any deed. She requested him to protect her by making one, but he received her request in silence. From anything that he did or said, she had no reason to expect a deed. He testified that he intended to deed her some property, but he never told her so. There was nothing in the nature of a contract between them to afford her any ground for supposing that he would convey her any of his property. She stated that she knew he was going to deed property to her; but, so far as we can see, her supposed knowledge was without any basis of fact, and was, therefore, not knowledge. The only explanation of her statement which the record warrants, is that her faith in her husband produced in her a feeling of certainty that he would protect her, and would not allow her money to be lost. And her other statement that she knew of these deeds, aside from its weakness in not indicating how she knew, is rendered valueless by her inability to say when she acquired the knowledge.
Mr. Knox signed and acknowledged a deed to the plaintiff in August, 1895, and kept it in his possession until the 24th day of the following December. On the latter day he made another deed, in which she was named as grantee, and on the same day gave both deeds to his own attorney, with instruction to have them placed on record. The attorney, accordingly, took the deeds to the proper office, and left them there for record. On the 18th day of February, 1896, long after the attachment was levied, the deeds, duly recorded, were returned to the attorney, and by him delivered to Mr. Knox, who thereupon gave them to the plaintiff. We are unable to find any tangible evidence that before she received them from her husband, she had any knowledge of their existence.
There is one circumstance connected with the transaction, which ought to be noticed. At the trial of this cause, the plaintiff was in possession of a note for 120,866.32, dated December 24, 1895, made by her husband, and payable to her. When she received it, there is nothing in the record to *363 indicate. It was supposed to represent the difference between the amount due on the note of 1890, and the aggregate consideration named in the deeds. If, on that day, there had been a settlement between the parties, and, together, they had agreed upon the sum at which the real estate should be taken by the plaintiff, and ascertained the balance due after deducting that sum from the total indebtedness, and the plaintiff had thereupon executed his note to her for that balance, her assent to the conveyance would be beyond cavil, even although the instruments were prepared elsewhere and afterwards, and she had no personal cognizance of their execution. But there was no such settlement, and there was no settlement at all. It is evident that Mr. Knox transacted this business as he transacted his other business, without consulting the plaintiff; that the fixing of the value of the .real estate, the ascertainment of the balance due, and the making of the note and deeds, were all his own doings, outside of the presence or knowledge of his wife; and it is entirely consistent with the evidence that she knew nothing of the note before she received the deeds.
But, waiving all else, a reversal is asked on the ground that, as the defendant, in his answer, alleged affirmatively that the conveyances were made with the intent to defraud creditors, the grantor, John W. Knox, was a necessary party to the suit; that the question of his fraud could not be litigated without his presence in the case ; and that the failure of the defendant to bring him in, is fatal to the judgment. The point is made now for the first time, but it will be considered.
If the judgment was unwarranted except upon proof that the conveyances were fraudulent, Mr. Knox was an indispensable party, and because he was not brought into the case, we should be compelled to order a reversal. Allen v. Tritch, 5 Colo. 222. But the allegation of fraud was not sustained by the proof. By reason of the want of evidence in its support, it became immaterial; and, from that allegation, no *364 harm resulted to Mr. Knox or the plaintiff by reason of the failure to make the former a party.
The answer denied the ownership which the plaintiff averred, and, for the purpose of investigating the character of her alleged title, Mr. Knox was not a necessary party. We have seen that, as against the defendant, she did not own the property at the time of the attachment, and that whatever title she did finally acquire, was subject to the lien of the attachment. Without title in her at the time the writ was levied, she could not maintain her suit; and because of the want of such title, no other judgment than the one rendered, would have been proper.
It is true that the court found that the transfers were fraudulent; but the finding was not warranted by the facts, and is not entitled to consideration. The judgment rests upon the plaintiff’s want of title, and upon nothing else; and as that is enough to sustain it, it will be affirmed.

Affirmed.