## EMMONS v. HARDING ET UX.

[No. 20,260.    Filed February 17, 1904.]

APPEAL AND ERROR.—*Assignment of Error.*—*Name of Court.*—Where appellant, presumably by oral direction, caused an appeal to be docketed in the Appellate Court, and an order of submission was afterward duly entered and the appeal thereafter transferred to the Supreme Court, under §1337u Burns 1901, the appeal will not be dismissed because of the failure of the assignment of errors to show the name of the court to which the appeal was taken.    *p. 155.*

DEEDS.—*Delivery.*—*Acceptance.*—A subsequent acceptance of a deed delivered by the grantor to a third person to be delivered to the grantee at the grantor's death, or a ratification of the transaction, may, by the operation of the fiction of relation, validate the deed.    *p. 158.*

SAME.—*Delivery.*—The delivery of a deed by grantor to a third person to be delivered to grantee at grantor's death to be valid must be of such a character that all dominion over the deed upon the part of the grantor should terminate.    *p. 158.*

SAME.—*Delivery.*—*Intent a Question of Fact.*—A grantor executed a deed to his daughter-in-law, and, with other deeds to his children, delivered it to a third person with written directions to hold the deeds until the grantor's death and deliver them to the grantees.    Referring to the deed to the daughter-in-law, the grantor, at the time of the delivery of the papers, said that he had lived with his son and daughter-in-law and that "he had been sick and a good deal of bother to them" and that he thought it was right to give them that much; that his son was in debt some, and he made the deed to the son's wife.    A few days afterward grantor stated that he would let the deed stand if there would be no further account against him.    Thereafter grantor demanded and received a return of the deeds and the writing which had been delivered with them, and conveyed all of the real estate to one of his sons, such son destroying the former deeds at the conclusion of the negotiations.    Grantor died, and the daughter-in-law brought suit to quiet title to the real estate conveyed to her.    *Held*, that the statements made by grantor at the time he turned over the papers were sufficient to authorize an inference of an intent to deliver the instrument in question as his deed, and that the question of intent should have been left with the jury.    *pp. 155–165.*

From Kosciusko Circuit Court; *J. D. Ferrall*, Judge.

Suit by Ellen Emmons against Oscar A. Harding and wife.    From a judgment in favor of defendants, plain-

tiff appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Reversed.*

*M. H. Summy, H. V. Lehman, A. G. Wood* and *F. E. Bowser,* for appellant.

*L. W. Royse, Bertram Shane* and *J. D. Widaman,* for appellees.

GILLETT, C. J.—This action was brought by appellant against appellees to quiet title to certain real estate. There was a trial by jury, and on the conclusion of the evidence the court directed a verdict in favor of appellees. Over a motion for a new trial, judgment was rendered on the verdict.

It is objected by counsel for appellees that the assignment of errors is defective, in that the name of the court to which the appeal was taken is not shown. Appellant, presumably by oral direction, caused the appeal to be docketed in the Appellate Court, and an order of submission was afterward entered. That court alone has original appellate jurisdiction over cases of the class to which this belongs. If the case had been filed in this court, it would have been our duty to transfer it. §1362 Burns 1901. The procedure of appellant in the particular stated was irregular, but the Appellate Court acquired jurisdiction by the steps taken, and as the irregularity is not serious we regard it as our duty to consider the appeal on its merits.

It remains to determine whether there was sufficient evidence to entitle appellant to go to the jury. The question was as to the delivery and acceptance of a deed. The real estate in question belonged to one Erastus H. Emmons, and was part of an eighty-acre tract of land. In the spring of 1900 Emmons signed and acknowledged eleven deeds, describing in the aggregate said tract of land. The deeds were in favor of his eleven children, respectively, except that as to the portion intended for the benefit of

his son Henry the deed was made in favor of the latter's wife, the appellant here. The land covered by said deed is the property in suit. It consists of about ten acres, on which is a house and a barn.

In August, 1900, Emmons sent for a friend and neighbor, one Blue, and handed him said deeds, and also a writing which contained directions concerning the disposition of said instruments. Emmons was at the time an old man, in failing health. He had resided with appellant and her husband upon said eighty acres of land for many years. We have only secondary, and somewhat fragmentary, evidence as to the writing which accompanied the deeds. It is in evidence that it contained a direction to Blue to hold the deeds until Emmons' death, and at "his death to deliver them to each one of the heirs." Said writing contained some further provisions to the effect that the crops were to be sold, and, if necessary, timber was to be sold (whether the timber was upon the tract embraced in the deed in favor of appellant does not appear) to meet the expense of Emmons' support, and to pay the cost of his burial. A number of oral statements were made to Blue by Emmons at the time of the delivery of said papers. Thus, when the deed to appellant was turned over to Blue, Emmons said, "This is Henry's," and upon Blue stating that it was made to Ellen (appellant), Emmons answered, "Yes, I made it to her." He then explained that he had done so because Henry was in debt, and he added that he thought it best to deed the land to her so that she and Henry could have a home. In the course of said conversation Emmons further said that he did not owe any man a dollar; that he "did owe Henry some, but made that all right with him in deeding the land to pay him." He further said, with reference to his having lived with Henry and his wife, that "he had been sick, and a good deal of bother to them," and that "he thought it was right to give Henry that much." The

bill of exceptions also shows the following in connection with the testimony of the witness Blue: "What did he [Emmons, Sr.] say about making this deed to Ellen Emmons? A. He told me that Henry Emmons was in debt some, and for them to have a home he made it to ————. The defendant objects. The court: What did he say about executing this deed to Mrs. Emmons, whether he did or not? A. Yes, sir, he did." At the time said papers were turned over to Blue, Emmons had and retained in his possession a box, which had a lock and key, wherein it was his habit to keep his personal papers.

A few days after the above-mentioned conversation, one Smith, who was acting for appellant and her husband, stated to the elder Emmons that Henry and his wife requested that he "let the deed stand as it was, and they would give no further trouble at all from any book account or anything of that kind." Emmons answered that he would allow the deed to remain if there would be no further account, and if said Smith would be a witness to that fact; an assurance which the latter thereupon gave. A little later Emmons called on Blue, and stated that he had "changed things," or "changed his mind," and he demanded and received said deeds and the paper which had been delivered with them. On August 30, 1900, Emmons, Sr., and appellee Harding concluded an oral negotiation for the sale to the latter of said eighty acres. He paid $1 down, and on the next day he received a deed and made an additional payment. Said appellee admitted upon the stand that he had heard of the making of said former deeds, and that said Blue held them, and said witness further admitted that he destroyed said deeds, at the request of said Emmons, at the time he concluded his negotiation for the purchase of said land. Emmons died in April, 1901, before this suit was commenced.

So far as described in the evidence, the deed in favor of appellant was unconditional. Appellant, at least, had

nothing to surrender to avail herself of the deed, if it was delivered for her use and benefit. If it can be said it was delivered with an express agreement between the father and Henry that the latter's account was to be canceled, there is room for the inference, from the statement of the elder Emmons that Henry had agreed to it, so that nothing remained to surrender. The evidence also tends to show a subsequent acceptance by appellant, and a waiver of all claim to an account upon the part of Henry.

It is insisted by counsel for appellees that as the grantor took the deed from the hands of the person to whom it was entrusted, and executed a deed of the land subsequently, the court should not treat the first deed as a conveyance of the land. A delivery of a deed to a third person to be by the latter delivered upon the grantor's death, would appear at first thought to be open to the objection that there was lacking that meeting of minds which is essential to the validity of contracts. Nevertheless it is hornbook law that a subsequent acceptance of the instrument or a ratification of the transaction may, by the operation of the fiction of relation, validate the deed.

It is to be observed that the instrument on its face purports to run in favor of the grantee, thus bringing him, in a sense, into privity with the grantor. *Gibson* v. *Chouteau,* 13 Wall. 92, 20 L. Ed. 534. It is required that the delivery to the third person be of such a character that all dominion over the deed upon the part of the grantor should terminate. The transaction is to be distinguished from an escrow. The instrument has been lodged with the third person to await the lapse of time, and not the performance of any condition, and there is nothing to prevent it from becoming the grantor's deed presently. *Foster* v. *Mansfield,* 3 Metc. (Mass.) 412, 37 Am. Dec. 154. In fact, the authorities proceed on the theory that a deed so delivered is for some purposes a present conveyance. *Osborne* v. *Eslinger,* 155 Ind. 351, 80 Am. St. 240, and cases

there cited.   This has been put on two grounds:   (1) That the act of the third person in receiving the deed on behalf of the grantee is not void; and (2) that it is presumed that a person will accept a deed which imposes no burden on him.

As to the first ground, reference may be made to the note to the case of *Armory* v. *Delamirie,* 1 Smith, Lead. Cas. (11 Eng. ed.), 356, 361.   In that note the annotators say: "A subsequent ratification of an act done in the name of the party who ratifies is tantamount to a prior command, nay, that it has relation back to the time of the act done, and is in point of law, and may be described in pleading as, a command.   So that, where a person, if present at the time, could lawfully command any act to be done, any other person, though either wholly without authority, or exceeding the limits of his authority, would be justified in doing that act, provided he did it in the name, or as one acting by the authority, of the person entitled (whether to his advantage or not), and obtained his subsequent ratification."   This, if we may omit a few exceptions not necessary to note here, is a correct statement of the law.   See 2 Bouvier's Institutes, §1316 *et seq.*

As to the second ground above stated—that of a presumed acceptance—it was once held that a disclaimer by matter of record was necessary to avoid the transaction, but it was afterwards adjudged otherwise.   *Townson* v. *Tickell,* 3 Barn. & Ald. 31.   As stated by Justice Ventris in *Thomson* v. *Leach,* 2 Vent. 198, a man "can not have an estate put into him in spite of his teeth."   But the presumption that a person will accept a pure, unqualified gift is so strong that the courts have quite generally manifested a disposition to act upon such presumption in the interim as a working rule for the operation of conveyances.   See *Mitchell* v. *Ryan,* 3 Ohio St. 377; 4 Kent's Comm., *455, and note.

There seems to be but one further question remaining in this connection, and that grows out of the fact that a subsequent acceptance is required. "Where the commencement, progression, and consummation of a thing are necessary to go together, there all of them are to be respected." 18 Viner's Abr., 288, title, Relation. It has been justly observed that, notwithstanding the presumption of acceptance, there is no actual acceptance of the title until the grantee has elected to claim under the deed. *Knox* v. *Clark,* 15 Colo. App. 356, 62 Pac. 334; *Tuttle* v. *Turner, etc., Co.,* 28 Tex. 759, 773; Devlin, Deeds, §285. See *Hulick* v. *Scovil,* 4 Gilm. (Ill.) 159; 4 Kent's Comm., *454; 3 Washburn, Real Property (4th ed.), 292. As before stated, the failure of the minds to meet is supplied by the doctrine of relation. Of the application of the fiction mentioned, it has been said: "Where there are divers acts concurrent to make a conveyance, estate or other thing, the original act shall be preferred, and to this the other acts shall have relation." 18 Viner's Abr., 290, title, Relation; *Landes* v. *Brant,* 10 How. 348, 372, 13 L. Ed. 449; *Bellows* v. *McGinnis,* 17 Ind. 64; *Ridgeway* v. *First Nat. Bank,* 78 Ind. 119; *Hollenback* v. *Blackmore,* 70 Ind. 234. One of the older writers on real property says: "There is no rule better founded in law, reason, and convenience, than this, that all the several parts and ceremonies necessary to complete a conveyance shall be taken together as one act, and operate from the substantial part by relation." 5 Cruise, Real Property, 551.

The reason of the doctrine is found in the desire of the courts to uphold the agreements of parties—*ut res magis valeat quam pereat,*—that the thing may prevail rather than be destroyed. "Without necessity, *ul res magis valeat,* the law will not feign any nullity." *Butler and Baker's Case,* 3 Rep. *25. The leading limitation of the doctrine is found in the maxim *in fictione juris semper æquitas existit*—a legal fiction is always consistent with equity.

Broom's Legal Maxims, *127. In the discussion of this maxim Mr. Broom says: "The law does not love that rights should be destroyed, but, on the contrary, for the supporting of them invents notions and fictions. And the maxim *in fictione juris subsistit æquitas* is often applied by our courts for the attainment of substantial justice, and to prevent the failure of right. 'Fictions of law,' as observed by Lord Mansfield, 'hold only in respect to the ends and purposes for which they were invented. When they are urged to an intent and purpose not within the reason and policy of the fiction, the other party may show the truth.' " A number of limitations have been put upon the doctrine of relation that are now unnecessary to consider. Perhaps as good a general statement of the subject as can be found in the books is in *Jackson* v. *Davenport,* 20 Johns. 537, 551, where it was said that the doctrine "is upheld to advance a right, not to advance a wrong, or to defeat collateral acts which are lawful, and especially if they concern strangers. This limitation of the fiction, so as to prevent it from doing injury to strangers, or defeating mesne lawful acts, is the common language of the books." See, also, *Butler and Baker's Case, supra;* 18 Viner's Abr., 285, title, Relation; *Heath* v. *Ross,* 12 Johns. 140; *Hawley* v. *Cramer,* 4 Cow. 717; *Jackson* v. *Douglas,* 5 Cow. 458; *Baker* v. *Wheeler,* 8 Wend. 505, 24 Am. Dec. 66; *Pratt* v. *Potter,* 21 Barb. 589. The view that strangers, who have a standing to go behind the legal fiction of relation and show the true time of acceptance, are not to be prejudiced by such doctrine, has often been recognized in this State. *Fite* v. *Doe,* 1 Blackf. 127; *Goodsell* v. *Stinson,* 7 Blackf. 437; *Woodbury* v. *Fisher,* 20 Ind. 387, 83 Am. Dec. 325; *German Mut. Ins. Co.* v. *Grim,* 32 Ind. 249, 2 Am. Rep. 341; *Ridgeway* v. *First Nat. Bank, supra; Brenner* v. *Quick,* 88 Ind. 546; *Jones* v. *Loveless,* 99 Ind. 317. The exception stated has been carried so far, as

shown by some of the above authorities, as to refuse to permit deeds to operate by relation as against intervening attaching creditors and others in analogous situations.

We think, however, that appellee Harding was not a stranger in the ordinary sense. If we assume that there had been a constructive delivery to appellant by the elder Emmons—a matter concerning which said appellee was put on inquiry—it may be said that he is in privity with his grantor, and, as applied to such a case, we think that, as a subsequent grantee with notice, said appellee stands on no better footing than that occupied by his grantor.

The theory that a constructive acceptance is possible is now thoroughly established, and, as all the cases travel upon the postulate that to make a sufficient delivery the deed must pass out of the dominion of the grantor, it ought scarcely to be held that one claiming under him, but with notice of all the facts, could take title, if the first grantee afterwards accepted the benefit of the prior delivery. In *Stone* v. *Duvall,* 77 Ill. 475, where a bill had been filed by a grantor to set aside a deed of which there had been only a constructive delivery, the Illinois supreme court said: "To cancel the deed would be to permit Duvall to change his mind, and to defeat his act deliberately done after consultation and advice taken, and done in accordance with his previously expressed purpose to convey to Mrs. Stone." If the grantor could not defeat the deed by action, it would seem that he ought not to be able to do so by a deed executed to a party who received the same with knowledge of the facts.

Although the authorities generally announce that the doctrine of relation is not to be applied to strangers, yet those who are in privity with the grantor are treated as bound, according to the general statements found in the cases. *Heath* v. *Ross, supra; Hawley* v. *Cramer, supra; Jackson* v. *Douglas, supra.* See *Fite* v. *Doe, supra; German Mut. Ins. Co.* v. *Grim, supra.* In *Buller and Baker's*

*Case, supra,* Lord Coke states "that as relations shall extend only to the same thing, and to one and the same intent, so they shall extend only between the same parties, and shall never be strained to the prejudice of a third person who is not a party, or privy to the said act." The question as to whether appellee Harding acquired a right superior to that of appellant, assuming that there had been a prior constructive delivery to her, is virtually determined against him by the case of *Smiley* v. *Smiley,* 114 Ind. 258.

We are not authorized to regard appellant as a grantee without equity. "Family agreements and settlements are treated with especial favor by the courts of equity, and equities are administered in regard to them which are not applied to agreements generally, and this on the ground that the honor and peace of families make it just and proper to do so." 12 Am. & Eng. Ency. Law (2d ed.), 875. In *Souverbye* v. *Arden,* 1 Johns. Ch. 240, 256, it was said by Chancellor Kent: "A voluntary settlement, fairly made, is always binding in equity upon the grantor, unless there be clear and decisive proof that he never parted nor intended to part with the possession of the deed." Assuming a valid delivery of the instrument in which appellant was named as grantee, the case seems one in which the fiction of relation should be resorted to, in order to work out equity. We can not uphold both instruments, and it seems clear, under the circumstances, that if the first instrument was ever the deed of the elder Emmons, the subsequent acceptance of it should have relation back.

The important question in the case is as to the intent of said Emmons at the time he delivered said instrument to Blue. He could not have it take effect subsequently as a testamentary disposition of a portion of his property, and, if he entrusted said instrument to Blue as his (said Emmons') agent, it is obvious that it did not pass beyond his control, and was therefore subject to be reclaimed. Under our statute it is possible to create a freehold estate

to commence *in futuro* (§3379 Burns 1901); but if it was
not designed by Emmons that there should be any grant
until after his death, the instrument could not with pro-
priety be termed his deed. It is enough, however, if such
an instrument is delivered with the intent that an estate
in land shall thereby pass, although it may be contem-
plated that the estate is not to be enjoyed in possession
until after the grantor's death. *Wilson* v. *Carrico,* 140
Ind. 533, 49 Am. St. 213; *Cates* v. *Cates,* 135 Ind. 272.

It is said that a deed may be delivered by words without
acts, or by acts without words. One or the other is nec-
essary that there may be some *indicia* of the intent of the
maker to deliver the instrument as his deed. The act or
the word may unequivocally evince the purpose of the
maker, particularly when the instrument is lodged with
the grantee; and the question of delivery may thus become
one of law, but ordinarily the question of delivery is largely
one of fact. *Dearmond* v. *Dearmond,* 10 Ind. 191; *Somers*
v. *Pumphrey,* 24 Ind. 231; *Nye* v. *Lowry,* 82 Ind. 316;
*Lindsay* v. *Lindsay,* 11 Vt. 621; *Jones* v. *Swayze,* 42 N.
J. L. 279; *Babbitt* v. *Bennett,* 68 Minn. 260, 71 N. W.
22; *Hibberd* v. *Smith,* 67 Cal. 547, 4 Pac. 473; *Bury* v.
*Young,* 98 Cal. 446, 33 Pac. 338, 35 Am. St. 186; *Murray*
v. *Earl of Stair,* 2 Barn. & Cr. 82. Some of the above
cases are much in point. Thus, in *Murray* v. *Earl of
Stair, supra,* it was said: "Upon further consideration,
we are all of opinion that there ought to be a new trial
in this case, and that it should be presented as a question
of fact for the jury upon the whole evidence, whether the
bond was delivered as a deed to take effect from the mo-
ment of such delivery, or whether it was delivered to Saun-
ders upon the express condition that it was not to operate
as a deed until the death of the then Lord Stair, and then
only upon the delivering up of the two promissory notes."

It is argued by counsel for appellees that the evidence
fails to disclose a purpose to dispose of an estate which

was to pass immediately, and it is further argued by them that the evidence shows that the deeds were turned over to Blue as the agent of the maker. We think, on the contrary, that there were several statements made by said Emmons at the time he turned over the papers which were sufficient to authorize an inference of an intent to deliver the instrument in question as his deed, and that, therefore, the question of intent should have been left to the jury.

Judgment reversed, and a new trial ordered.