BIRCHER ET AL. *v*. WASSON ET AL.

[No. 19,388.   Filed February 9, 1962.]

28

*Dunbar & Dunbar, Merlin M. Dunbar, Lucien L. Dunbar, Thomas Clay Collier,* all of Indianapolis, and *John P. Lutz, Jr.,* of Booneville, for appellants.

*William Foreman, Bamberger, Foreman, Oswald & Hahn,* of Evansville, for appellees, Charlotte E. Wasson; Louis G. Wasson; Louis G. Wasson, Co-Executor of Estate of James R. Wasson, deceased; Valerie Wasson, Pamela Wasson and John Wood Wasson, by their Guardian Louis G. Wasson; Charlie E. Wasson, and Charles Allen Wasson, by his Guardian Charlie E. Wasson.

*Joseph H. Harrison,* of Evansville, attorney and guardian ad litem for appellees, Judith Ann Wasson, Karen Charlotte Smith, Mark Branson Smith, Reed Wasson Hoyt, Phelps Wasson Hoyt, Scot Wasson Hoyt, Cheryl Rae Wasson, Donna Ann Wasson (La Donna Wasson), Frank Ertel Wasson, Jed Ross Wasson, Rita Jeanne Wasson, Gregory Louis Wasson, Jann Maurine Wasson and Wilbur Gordon Wasson.

Ax, J.—Appellants filed an amended petition to construe Item Three of the will of James R. Wasson, deceased, claiming in substance that an attempted devise under Item Three to transfer all of decedent's real estate to the Trustees of a purported separate trust for his grandchildren was void and that therefore said real estate passed by Item Four of his said will to his children, the residuary devisees.

From an adverse judgment of the court below which found against appellants by construing that Item Three of said will was valid and that the real estate passed to the Trustees of a trust referred to in said Item Three for the benefit of the grandchildren of decedent, appellants have brought this appeal raising the question that the decision and finding of the court

is not sustained by sufficient evidence and is contrary to law.

By stipulation, appellants (petitioners below) introduced into evidence the probated will of decedent showing the date of execution as February 21, 1951. The pertinent parts of this will involved herein are the following:

"ITEM THREE (3). All of my real estate of which I shall die seized and possessed, or to which I may be entitled at the time of my decease, I give, devise and bequeath at the time of my decease to my Trustees as set out in my Trust Agreement for the benefit of all my grandchildren, per capita, share and share alike. In case any other child or children shall be born to my children before my death, they shall share, per capita, under the terms of the Trust Agreement. In case of the birth of such child or children to my children after my death, such issue shall share, per capita, under the terms of the Trust Agreement. In the event of the death of any of my grandchildren before my demise or during the term of the said Trust Agreement, the share or shares of the deceased grandchild or grandchildren shall be divided equally among the remaining grandchildren.

"ITEM FOUR (4). All the rest residue and remainder of the property of whatsoever character and wheresoever situate not heretofore disposed of by me of which I may die seized or posessed, or which I may own or have any interest in at the time of my death, I give, devise and bequeath to all my children surviving me, share and share alike.

"ITEM SIX (6). I hereby nominate and appoint Louis G. Wasson, my son, Jeannette Gray, my daughter, Elsie Bircher, my daughter and The Elberfeld State Bank, Elberfeld, Indiana and its successors trustee of the Trust herein mentioned."

Also by stipulation, appellants introduced in evidence an instrument labeled "JAMES R. WASSON

TESTAMENTARY TRUST" showing execution as of February 21, 1951. The pertinent parts of the instrument are as follows:

"THIS AGREEMENT executed in duplicate in the City of Evansville, County of Vanderburgh, State of Indiana, this 21st day of February, 1951, between James R. Wasson of Evansville, Indiana (hereinafter called the 'Donor') and Louis G. Wasson, Jeannette Gray, Elsie Bircher and The Elberfeld State Bank jointly (hereinafter called the 'Trustees') WITNESSETH:

That in consideration of acceptance by the Trustees of the Trust hereby created and the payment by the Donor to the Trustees of the sum of One Dollar ($1.00) the receipt of which is hereby acknowledged; The Donor does assign, transfer and deliver to the Trustees at the time of his demise the property described in 'Exhibit A' attached hereto and the Trustees agree to hold, manage, invest and distribute the same as a Trust Fund upon the following terms and conditions:

DIVISION INTO SHARES

Upon the death of the Donor, The Trustees shall act with full power and authority at any time or times to sell, mortgage, pledge, exchange or otherwise deal with or dispose of the property comprising the estate upon such terms as they shall deem best, to settle and compound any and all claims in favor of or against the estate as they shall deem best, and for any of the foregoing purposes to make, execute and deliver any and all deeds, contracts, mortgages, bills of sale or other instruments necessary or desirable therefor and to perform all and every act and thing whatsoever, requisite, necessary and proper as they shall deem best for the benefit of each of the following heirs-at-law:

James R. Wasson Testamentary Trust

1. Richard Z. Wasson
2. Judith Ann Wasson
3. Charles Allen Wasson

4. Valerie Wasson
5. Pamela Wasson
6. John Wood Wasson
7. Rita Jeanne Wasson
8. Gregory Louis Wasson
9. Jann Maurine Wasson
10. Cheryl Rae Wasson
11. LaDonna Wasson
12. Karen Charlotte Smith
13. Mark Branson Smith

And for any child or children who shall be born to my children either before or after my death, all of whom shall share and share alike, per capita, all under the terms and conditions hereinafter set forth.

## RESERVATION AS TO PAYMENT OF NET INCOME TO BENEFICIARIES

The Trustees shall let the net income accumulate and be reinvested and become a part of the principal until all payments, mortgages and loans secured and unsecured now existing and required in the future on real estate or against the value of the property are paid or are sufficiently reduced so as not to jeopardize the estate as a whole if and when said income is paid.

## GRANDCHILDREN'S SHARE — REMAINDER TO DESCENDANTS

The Trustees shall pay the net income derived from the estate for said grandchildren in as nearly equal amounts as practical as long as they shall live and on their death then to the surviving grandchildren. It is not the intent of the Donor to make any provision for the future respective husbands or wives of said grandchildren. This Trust shall be divided among the said grandchildren twenty-one (21) years from the death date of the Donor.

## INTEREST OF CESTUI

The interest of each and every beneficiary hereunder and of all persons claiming under them or any of them shall be only in the earnings, avails and proceeds arising from the sale or other dis-

position of said real estate and such interest is hereby declared to be personal property and no beneficiary hereunder shall have any title or interest, legal or equitable in or to said real estate as such but only an interest in the earnings, avails and proceeds thereof as aforesaid.

. . . . .

## TO INVEST

The Trustees may invest any money at any time in the Trust Fund in such Bonds, Stocks, notes, real estate or real estate mortgages or other securities or such other property real or personal, as the Trustees shall deem wise, without being limited by any statute or rule of law regarding the investment of Trust Funds, provided however, that the Trustees shall make no investment, sale or other disposition of the Trust Fund during the lifetime of the Donor so long as he shall be legally competent to act, without the prior written approval of the Donor, unless the Donor shall fail to indicate his approval or disapproval of any proposed sale or investment of said Trust Fund within thirty (30) days after he has been requested to do so.

## BROAD POWERS OF TRUSTEES

The Trustees shall have full power at any and all times and from time to time to do any and all and every act whatsoever necessary and proper as they shall in their judgment deem best for the benefit of the beneficiaries hereunder.

## CHANGE OF TRUSTEE

In the event of the death, inability or removal of either or all of the Trustees hereunder, the Donor or the wife of the Donor or if they be not then living, the majority in interest of the Donor's surviving children may nominate as successor Trustee hereunder any trust company, wherever situate. Such successor shall have all the duties, powers, and discretions hereinabove conferred upon Louis G. Wasson, Jeannette Gray, Elsie Bircher and The Elberfeld State Bank as Trustee. In the event that none of the children shall be living or competent to act then such Trustee shall be appointed by a court of competent juris-

diction. However if the Surviving Trustee so desires he or she or it may continue at his or her discretion the administration of the Trust Fund until such time as the surviving trustee may deem it expedient to hand over the Trust fund to the successor Trust company.

IN WITNESS WHEREOF on this 21st day of February, 1951 the Donor has set his hand and seal and the Trustees have caused this Agreement to be executed by setting their hands and seals the day and year first above written and same will become effective upon the death of the said Donor.

s/ James R. Wasson     SEAL

James R. Wasson, Donor

SEAL

Louis G. Wasson, Trustee

SEAL

Jeannette Gray, Trustee

s/Elsie Bircher     SEAL

Elsie Bircher, Trustee

THE ELBERFELD STATE BANK    SEAL

By s/ Charles A. Morris

Charles A. Morris, President

Attached to said instrument appeared the following:

### "JAMES RICHARD WASSON LIVING TRUST EXHIBIT A

"The Trustees, Elsie Bircher and Jeanette Gray and Louis G. Wasson (and the Elberfeld State Bank) acknowledge receipt of the following described properties which are to be held in trust for the purposes set forth in the foregoing Trust Agreement of which this sheet is specifically made a part:

"All real estate, coal and mineral rights, improvements, appurtenances, undivided interests in and to including privileges, equipment, ma-

chinery, leases for the following: (Here insert descriptions of real estate rights described on 8 pages) "Received this 21st day of February, 1951.

s/ James R. Wasson   SEAL

James R. Wasson, Donor

_____ (SEAL)

Louis G. Wasson, Trustee

_____ (SEAL)

Jeannette Gray, Trustee

s/ Elsie Bircher               (SEAL)

Elsie Bircher, Trustee

THE ELBERFIELD STATE BANK (SEAL)

By s/ Charles A. Morris

Charles A. Morris, President"

After introduction of the above exhibits, appellants rested their case.

The entire evidence presented by appellees (respondents) consisted of interrogation of one witness, Louis G. Wasson who identified himself as the son of decedent and as a co-executor of decedent's will. The witness also identified the signature of his father, the decedent, on page 8 of the Petitioner's Exhibit 2, purporting to be the James R. Wasson Testamentary Trust. Louis G. Wasson also testified that he did not know why he and his sister, Jeannette Gray, had not signed said trust agreement as Co-trustees, though his sister and the Elberfeld State Bank had signed same. The witness also indicated his willingness to serve as Co-trustee under said trust instrument. Mr. Wasson also testified that his father had not executed any trust agreement, other than petitioners' Exhibit 2, on or prior to the date of decedent's will, February 21, 1951.

On cross-examination Louis G. Wasson testified that he was not present when his father's will was ex-

ecuted, nor did he witness the execution of the purported James R. Wasson Testamentary Trust, petitioners' Exhibit 2.

There was no other evidence, oral or documentary presented by the parties.

Appellants argue that (1) in order for the devise of Item Three (3) of decedent's will to be effective his will must have a) clearly identified a valid inter-vivos trust which was in existence at the time of his death, or b) must have clearly identified and incorporated by reference a writing or document which existed at the time of execution of such will and at the time of his death; and (2) the court below erroneously found and decided that both of the aforementioned prerequisites were satisfied and that the devise was to the James R. Wasson Testamentary Trust and also said trust agreement was incorporated by reference into decedent's will. Such finding, they urge, is not supported by the record of evidence and is contrary to the applicable law, not to mention being extremely inconsistent.

It is appellants' position that the devise of Item Three of decedent's will fails and all of his real estate which he owned at his death passes pursuant to Item Four, which was the residuary clause, to his children.

Under the first point of appellants' argument above set forth, the applicable and controlling statute is found in the Acts of the General Assembly of Indiana for 1953, Ch. 112, §601, p. 295, Burns' Anno. Stats. 1933 (1953 Repl.) §6-601 (j) and set forth below:

> "(j) If a testator devises real or personal property to be added to a trust or trust fund which is clearly identified in his will and which is in existence when his will is executed, such devise shall be valid and effective. Unless the will provides otherwise, the property so devised shall be

subject to the terms and provisions of the instrument or instruments governing the trust or trust fund even though amended or modified after the execution of the will."

It is appellants' position that the devise of decedent's will under Item Three must fail under the test of the foregoing statute because, in fact, no trust was ever created by the James R. Wasson Testamentary Trust during decedent's lifetime. Appellants argue that even if it is presumed that decedent executed this instrument, when it purports to have been executed, he did not create a valid trust at the time of execution, nor was it in existence at anytime during his life, or at the moment of his death, because he clearly did not intend for it to take effect, at least until his death.

We are unable to agree with this argument of appellants. It is apparent that the trust agreement effected a present transfer of an interest described in Exhibit A attached to said trust agreement. In essence, the trust agreement is substantially the same as a present deed of conveyance. It was not ambulatory or testamentary in character. This is evident from the language of the several portions of the document itself, viz:

1. On the first page of the trust agreement appear express words of grant, i.e. ". . . The Donor does assign, transfer and deliver and by these presents does assign, transfer and deliver to the Trustees at the time of his demise the property described in 'Exhibit A' attached hereto. . . ." These are clearly words of present grant and are in form like a deed of conveyance and not like a will or other testamentary type document. Therefore, the trust agreement conveyed on its date, February 21, 1951, a presently effective in-

terest to the grantees (the Trustees named in the trust agreement.)

2. A section of the trust agreement appearing under the heading "To Invest," provides that "the Trustees shall make no investment . . . during the lifetime of the Donor, so long as he shall be legally competent to act, without the prior written approval of the Donor. . . ." Certainly, this power of investment during the lifetime of the Donor is not a testamentary type power but is one which could only be granted in connection with and as a part of a lifetime transfer intended to be immediately effective.

3. A section of the trust agreement appearing under the heading "Change of Trustee," provides that "in the event of the death, inability or removal of either or all of the Trustees hereunder, the Donor or the wife of the Donor or if they be not then living, the majority in interest of the Donor's surviving children may nominate as successor Trustee hereunder any trust company, wherever situate." This provision clearly evidences that the Donor, James R. Wasson, had in mind that the trust was effective on and after its date and during his lifetime. Certainly, a power in the Donor to name a successor Trustee is not a testamentary type power. Such a provision is wholly inconsistent with and would not be appropriate in a testamentary type document. However, the trust agreement here in question was clearly intended to be effective on and after its date and the fact that decedent realized that it would be so effective is clearly evidenced by said provision of the agreement pertaining to the naming of a successor Trustee by him.

4. In and by "Exhibit A" to the trust agreement, two of the Trustees on February 21, 1951, acknowledged receipt of possession of the properties described

in said "Exhibit A." It seems elementary that such language is only appropriate in connection with a present transfer to an immediately effective trust.

5. The trust agreement was irrevocable. The trust agreement contains no provision whereby James R. Wasson reserved authority to revoke the instrument. §56-613 of Burns' Ind. Stat. (1961 Replacement) provides as follows:

> "Every power, beneficial or in trust, shall be irrevocable, unless an authority to revoke it is reserved in the instrument creating the same",

and there being no such reserved authority in the trust agreement in question it is irrevocable. *Colbo et al.* v. *Buyer et al.* (1956), 235 Ind. 518, 134 N. E. 2d 45.

Appellants have quoted three provisions of the trust agreement which, they argue, indicate that the agreement was not to take effect until Mr. Wasson's death. It is evident that the trust agreement provides in the granting clause thereof that the transfer is to be "at the time of his demise," but this does not affect the fact that the estate transferred was immediately and irrevocably transferred. In Indiana, by statute, a freehold estate in real estate may be created to commence at a future date. This is the express language of §56-139, Burns' Anno. Stats. (1961 Replacement), which reads in part as follows:

> "A freehold estate, as well as a chattel real, may be created to commence at a future day; . . ." See also *Emmons* v. *Harding* (1904), 162 Ind. 154, 70 N. E. 142.

It has repeatedly been held by the Supreme Court of Indiana that such transfers intended to commence

in enjoyment and in possession at a future date are not invalid and are not testamentary in character. For example, in the case of *Spencer et al .v. Robbins et al.* (1886), 106 Ind. 580, 5 N. E. 726, the Supreme Court construed a deed of land which substantially appears to be in the usual statutory form, except that it contained the following language:

> " '. . . To be equally divided between them at my decease, and after the payment of all my funeral and burial expenses by them fully settled; and they are to pay all taxes and other expenses of repairs and improvements on the same during my natural life, and then the title to vest in them absolutely. . . .' " (See page 582 of opinion.)

The Supreme Court, in holding that the deed was an absolutely valid conveyance of an interest in land, said:

> "This paper was dated, signed and acknowledged, with the formalities of a deed. The insistence of counsel is, that this deed vested in the grantees no estate whatever which was to take effect during the lifetime of the grantor. It was, therefore, testamentary in its character, and not having been executed in conformity with the law governing the execution of wills, they contend that it is void. The premise granted, the conclusion insisted upon might well follow.
>
> · · · · ·
>
> "The instrument under consideration contains none of the language or peculiarities of a will. It embodies all the requisites of a statutory deed, and plainly vests in the grantees an estate in fee simple, unless the recitals following the description of the land manifest a contrary intent. We do not think such an intent appears upon the face of the deed.
>
> "The recital that the land was to be equally divided between the grantees, at the decease of

the grantor, was not in derogation of the absolute grant in fee simple. The most that can be said of the recitals is, they manifest an awkward, and probably successful, attempt to reserve to the grantor a life-estate in the land.

"An instrument executed conformably to the statute, which is to operate in the lifetime of the grantor, and which passes any estate in the property during the grantor's lifetime, even though the absolute enjoyment of the estate passed is postponed until after the grantor's death, is a deed, and not a will. *In re Will of Dietz*, 50 N. Y. 88.

"Prior to the enactment of the statute of uses, a deed which attempted to create a freehold estate to commence *in futuro*, without a particular estate to support it, was invalid. By the express terms of Section 2959, R. S. 1881, such estates may now be created. Wherever the estate is presently created, so that an interest vests with the execution of the paper, then, even though the enjoyment of the estate is postponed, the instrument creating it is a deed.

"The conveyance under consideration, in our view, vests a present estate in fee simple in the grantees. If it contains the reservation of a life-estate in favor of the grantor, it does so only by implication. Whether, it does or not can make no difference, inasmuch as a present interest is vested in the grantees. It would seem probable that the purpose was to reserve the use and possession of the estate to the grantor during her lifetime, the grantees meanwhile paying the taxes, expenses of repairs and improvements. Of the validity of such a deed there can be no question.

.   .   .   .   .

"The rule is that unless an instrument, which has been fully executed, from every point of view seems to be a nullity, it will not be intended that the parties meant that it should be invalid, and some effect will, if possible be given to it." (See pp. 582-585 of opinion)

In the case of *Kelley, Gdn.* v. *Shimer Adm.* (1899), 152 Ind. 290, 53 N. E. 233, the Supreme Court construed a deed which contained language very similar to the language in the Wasson trust agreement. In that case, a deed in otherwise ordinary statutory form contained a provision reading as follows:

> " 'This deed is to take effect and be in full force on and after the death of this grantor, Eliza Cossell.' " (See p. 290 of opinion.)

The Supreme Court held that the deed was valid and stated the Indiana rule to be as follows:

> ". . . The instrument in question embodies all the requisites of a statutory deed, as provided by section 3346 Burns' 1894, section 2927 Horner 1897, and clearly vested in the grantee an estate in fee simple, unless the recitals followed the description of the real estate have a contrary effect. The general rule laid down by the authorities is that a declaration that the deed shall not go into effect until the death of the grantor does not give it a testamentary character. . . . The cases decided by this court hold that recitals in deeds substantially the same as those in this case did not render such instruments testamentary in character, but that they conveyed an estate in fee simple when the instruments were executed, and that the only effect of such recitals was to reserve a life estate to the grantor, and thus postpone the possession of the grantee until after the death of the grantor. . . ." (See pp. 291-292 of opinion.)

To the same effect is the decision of the Supreme Court of Indiana in the case of *Adams* v. *Alexander* (1902), 159 Ind. 175, 64 N. E. 597, wherein the court upheld the validity of a deed which provided with respect to the interest of one of the grantors that at her decease all of said realty shall go and belong to the heirs at law of named persons.

It seems apparent under the Present Probate Code of Indiana and the law of Indiana as evidenced by the above cited decisions of the Supreme Court of Indiana, decedent's trust agreement of February 21, 1951 was a valid instrument the moment it was executed and that at that moment it conveyed immediately and irrevocably an interest in the real estate described therein. The trust thereby created was, therefore, a trust such as is referred to by Subsection (j) of §6-601 of Burns' Ind. Stats. (*supra*), which in clear and positive terms states that a devise to such a trust shall be valid and effective.

Appellants argue that Mr. Wasson gave up neither the control, the possession, enjoyment or title, legal or equitable, to such real estate, at least one of which was necessary to create a present trust of land or interests in land. We find no evidence in the record to substantiate this argument in appellant's brief.

Appellants also argue (a) that decedent made no. deeds to the subject real estate, (b) that the decedent never delivered up possession of the real estate, (c) that the trustees never assumed any duties under the trust agreement, and (d) that the trustees did not exercise dominion and control over the trust property. There is likewise no evidence in the record to substantiate these conclusions upon the part of the appellants.

Under the second point argued by appellants the position is taken that the trust agreement of February 21, 1951, was not sufficiently identified in Item Three of the Last Will and Testament of James R. Wasson, deceased, and that there is no sufficient evidence that the trust agreement was in existence at the time of the execution of decedent's will and at his death. Appellants, therefore, argue that the instru-

ment creating the trust could not be incorporated by reference into decedent's will as authorized under the terms of §6-601 (h) of Burns' Ind. Stats. (*supra*).

The lower court by its judgment expressly held that the trust agreement of February 21, 1951, was incorporated by reference into Item Three of decedent's will, and this Court is of the opinion that the judgment of the lower court is correct.

The essential elements of incorporation by reference as specified in §6-601 (h), of Burns' Ind. Stats. (*supra*) are as follows:

1. That the testator in his will refer to a writing.
2. That such writing be clearly identified in the will.
3. That such writing be in existence both at the time of the execution of the will and at the testator's death.

It appears to be clear that all these required elements are present in the facts in the case at bar. Item Three of decedent's will does refer to a writing. The writing, i.e., the trust agreement, was clearly identified, and the uncontradicted evidence establishes that it was in existence both at the time of the execution of the will and at the time of decedent's death.

Appellants contend that there can be no incorporation by reference unless the will refers to the instrument sought to be incorporated as an existing instrument. We cannot agree with this contention. The Indiana statute above referred to requires that the instrument sought to be incorporated be in existence as a matter of fact, but it is not required that the will specifically refer to this fact. It is sufficient if the fact of existence is shown by the

evidence. However, certainly decedent's references in Item Three of his will to "my Trust Agreement" and "my Trustees" are references to an existing instrument and existing trustees. Nothing in the language of Item Three of the will contains even the slightest implication of a reference to the future. The only logical interpretation of a reference to "my Trust Agreement" is that it is a reference to an agreement then in existence.

The uncontradicted evidence in this case establishes that the trust agreement was executed by James R. Wasson and that his signature thereon is genuine. The uncontradicted evidence also establishes that the decedent, James R. Wasson, executed both his Last Will and Testament and the Trust Agreement on February 21, 1951. The instruments are both dated on and as of that date. It is the clearly established law in the State of Indiana that in the absence of evidence to the contrary it will be presumed that an instrument was executed on the date that it bears. *Collins, Trustee* v. *Siegel* (1938), 214 Ind. 206, 14 N. E. 2d 582. In this case at bar there is absolutely no evidence that the documents were executed on any date other than the date which they bear, i.e. February 21, 1951, and it must, therefore, be conclusively presumed that they were executed on that date. It is only logical to assume that decedent in executing his will and said Trust Agreement intended to execute valid and effectual documents and had no intention to execute documents which would not be effective in accordance with their terms and provisions. This presumption is recognized as a matter of law in Indiana. For example, in the case of *Swain* v. *Bowers* (1927), 91 Ind. App. 307, 158 N. E. 598, this Court said:

"It is our duty to uphold and give effect to the will, if possible, without violating any established rules of law. If the language of a will is susceptible of two constructions, one of which would violate a statute or an established rule of law, and the other would sustain the same, the latter construction should be given it, since the law presumes the testatrix did not intend to violate such statute or rule of law." (See p. 319 of opinion.)

Since as a matter of law Mr. Wasson's will and Mr. Wasson's trust agreement must be regarded as having been executed at the same time, it follows as a matter of law that the trust agreement must be regarded as being in existence at the time of the execution of the will.

The contentions of the appellants have heretofore been fully and finally answered, adversely to appellants, by the case of *Fesler, Adm.* v. *Simpson et al.* (1887), 58 Ind. 83, in which the facts were strikingly similar to the facts in this case. It appears from the opinion in that case that on July 7, 1856, one Josiah Simpson and his wife executed and acknowledged a deed in favor of their son, Walter Simpson, conveying certain real estate to him for life, with remainder to his children. The evidence further disclosed that on the date of the execution of the deed said Josiah Simpson executed a will, the fourth clause of which read as follows:

" 'Fourth. I give and bequeath to my son Jesse Simpson the tract of land described in a deed executed by me and my wife to him, dated June 30th, 1855; and to my son David Simpson, I give and bequeath the land described in a deed to him, executed by me and my wife June 30th, 1855; *and to my son Walter Simpson and his children, I give and bequeath the tract of land described in a deed to him made by me and my wife July 7th, 1856, to be held as therein* provided; and it

is my will, and I hereby direct my executor after my death, to deliver said deeds to my said children to whom the said land is conveyed, it being my intention to retain said deeds until my death.' " (See p. 85 of opinion.)

After the testator died litigation arose pertaining to the construction of the fourth clause of his will and the deed of the same date. One of the questions involved was whether or not the deed had been fully identified as being the deed referred to in the will. It clearly appears from the opinion of the Supreme Court that the only evidence with respect to the issue of identification consisted of the two documents (i.e., the will and the deed). The court in holding that the deed was fully identified as being the deed referred to in the will said:

"The deed which was shown to have been executed by Josiah Simpson to his son Walter and his children, save its delivery, was, as we think, sufficiently identified as the one to which the testator had reference in his will, it not appearing that the testator executed any other to him, of that or any other date." (See p. 85 of opinion).

In other words, the Supreme Court of Indiana there held that, in the absence of any showing that the testator had executed any other deed to his son at any other time, the deed introduced in evidence (dated the same day as the will) was sufficiently identified as the deed intended to be referred to by the testator. The factual situation in the case at bar is substantially the same as in the *Fesler* case except that here the case in favor of incorporation by reference is much stronger for the reason that in this case the only testimony presented was definitely to the effect that decedent had not, on or prior to the date of his will, executed any trust agreement other than the agree-

ment of February 21, 1951, introduced in evidence as Appellants' Exhibit No. 2, and the testimony of Louis G. Wasson is in evidence in this case without the slightest contradiction.

The rule in Indiana permitting incorporation of another document into a will by reference (which in Indiana is now a part of our Probate Code) is the general majority rule in other jurisdictions. For example, in the case of *Montgomery* v. *Blankenship* (1950), 217 Ark. 357, 230 S. W. 2d 51, 21 A. L. R. 2d 212, it appears that a testatrix executed a living trust agreement contemporaneously with the execution of her will. The trust agreement reserved to the testatrix the income of the trust for life and provided for distribution at her death to designated beneficiaries. The trust was subject to amendment or modification during the lifetime of the decedent. The residuary clause of her will gave all of the residue of her estate to the trustee under the trust agreement to be added to and made a part of the funds of the trust. Certain heirs of the decedent contended that the trust agreement was invalid and that it had not been properly incorporated into the decedent's will by reference. The Arkansas court disposed of the case on the grounds that there had been a proper incorporation by reference. It further appears from the opinion that there was no evidence as to whether the will or the trust agreement was executed first. The court held, however, that the order of the execution was immaterial and that it need only appear that the trust document was in existence, whether signed or not, at the time of the execution of the will. The court further held that where there is an incorporation by reference it is immaterial whether the incorporated document is alone valid or not. The court said that the

incorporated document "may be treated as part of the will for the purpose of ascertaining the beneficiaries and the share to be given to each."

Another helpful case from a jurisdiction other than Indiana is the case of *In re Estate of Dimmitt* (1942), 141 Neb. 413, 3 N. W. 2d 752. In that case the decedent executed a will containing among other items the following:

> " 'Sixth: I have already deeded to my niece, Alta J. Pullman, the southeast quarter (SE 1/4) of section eight (8), township twenty-four (24), north range four (4), east of the 6th P.M. in Cuming county, Nebraska, and for that reason I do not devise any real estate to her in this Will.' " (See p. 419 of opinion.)

It appears from the evidence that although the deed referred to in Item Sixth of the will was in existence at the time of the execution of the will it had never been delivered. The court in its preliminary consideration of the issues said:

> "The cardinal rule of testamentary construction is to ascertain the intention of the testator as expressed in his will, and to give it effect, unless the testator attempts to accomplish a purpose or to make a disposition contrary to some rule of law or public policy." (See p. 420 of opinion).

The court further stated that wherever possible effect must be given to every word in a will. The court concluded by holding that an unattested or imperfectly attested paper may be incorporated in a will by reference if the terms of the will are sufficient to identify the paper and show the testator's intention to give effect to the paper.

There are other circumstances in the case at bar which independently create a strong presumption

against the contentions of appellants. Both Charlie A. Morris and Elsie Bircher signed both decedent's will and trust instrument. In respect to the will they signed as witnesses and in respect to the trust agreement they signed as Trustees. Mrs. Bircher and the bank, of which Mr. Morris is president, are appellants herein who sought to destroy the will which they witnessed and the trust agreement in which they joined as parties. Neither Mrs. Bircher nor Mr. Morris testified at the hearing in this case. A strong presumption, therefore arises that their testimony, if they had testified, would have been adverse to the contentions now urged by them. This presumption is a well recognized general rule of law and is well stated at 20 Am. Jur. 192 as follows:

> "It is well settled that if a party fails to produce the testimony of an available witness on a material issue in the cause, it may be inferred that his testimony, if presented, would be adverse to the party who fails to call the witness. . . ."

This same rule has been recognized and adopted by this Court. For example, in the case of *Bowes* v. *Lambert* (1943), 114 Ind. App. 364, 51 N. E. 2d 83, this Court said:

> ". . . Where a party has the power and opportunity of producing a witness, presumably favorable to him, who could further enlighten the court or jury, his failure to produce such witness gives rise to an inference that such witness if produced would give testimony unfavorable to the party failing to produce him. . . ." (See p. 369 of opinion).

The very strong presumption in this case, therefore, is that the testimony of Mrs. Bircher and Mr. Morris would have been adverse to their contentions and

would have shown that the will and the trust agreement were executed by decedent at the same time on February 21, 1951.

Appellants finally argue that decedent's real estate passed under Item Four of his will, which is a residuary type clause.

Having demonstrated above that we are of the opinion that Item Three of said will is valid and validly refers to and identifies the trust agreement of February 21, 1951, it follows that all of the real estate of decedent passed under said Item Three and that there is none remaining to pass under Item Four of the will.

Judgment affirmed.

Ryan, C. J., Myers, J., and Cooper, J., concur.

NOTE.—Reported in 180 N. E. 2d 118.