# DOROTHY B. TROSCH *v.* MARYLAND NATIONAL BANK ET AL.

[No. 1263, September Term, 1975.]

*Decided July 1, 1976.*

The cause was argued before MENCHINE, LOWE and MELVIN, JJ.

*Max E. Blumenthal* for appellant.

*William A. Snyder, Jr.*, with whom were *Ober, Grimes & Shriver* on the brief, for appellee Maryland National Bank.

LOWE, J., delivered the opinion of the Court.

Such immediate attraction as appears in appellant's argument derives more from its beguiling articulation than from inherent merit. The sole question is whether a trust executed by Ivan E. Trosch simultaneously with his will was

in existence at the time of his death, because the residuary clause of his will was subject to that condition precedent:

> "I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate and howsoever acquired, unto JEANETTE LEVY and the MARYLAND NATIONAL BANK and their successors, Trustees under Declaration of Trust from me dated [no date appears], to be held, administered and ultimately distributed in accordance with the terms and provisions of said trust as if originally a part thereof. *In the event that at the time of my death there is no such trust in existence*, then I give, devise and bequeath said rest and residue of my estate, unto my beloved wife, DOROTHY TROSCH, if she is then living." (Emphasis added).

The language emphasized gave rise to this dispute. Appellant, Dorothy Trosch, based her claim to the residue of the estate upon the common law premise that a requisite to the existence of a valid trust is that there be some trust property, *i.e.*, a corpus, even if a nominal one. For that proposition she cites I *Scott on Trusts*, §§ 54.3, 57.3 (3rd ed); I Casner, *Estate Planning*, 282 (3rd ed.) and the *Restatement, Trusts* 2nd, § 57, comment f and § 54, comment f. From this premise she argues that the testator intended that the trust have an independent existence at the time of his death, that the trust *instrument* was never fully executed and consequently never existed, and even if the trust instrument was executed, it was never consummated as a trust since there was never a trust corpus. Even if created, she contends that the trust was revoked by later conduct of the testator in recalling from the bank certain life insurance policies to which he had alluded in the preamble to the trust instrument.

The preamble to which she alludes designates what property is to comprise the trust corpus;

> "WHEREAS, the Settlor has designated, or is

about to designate the said Trustees as the beneficiaries or assignees of the policies of insurance on his life described in the schedule marked 'Schedule A' attached hereto as part hereof, and the Settlor may hereafter designate the Trustees as beneficiaries or assignees of other policies on his life, and may add other property to this trust estate by grant in trust, or by Last Will and Testament, and the Settlor desires the proceeds of said policies and any other property which may be added to the said trust estate by his Last Will and Testament, or by grant, or which may be added in any other manner permitted hereunder, to be held in trust for the uses and purposes hereinafter set forth."

The trial court held that a valid trust was created by the execution of the trust instrument and was given testamentary vitality by incorporation by reference into Trosch's will.

Estates and Trusts Art., § 4-107 provides:

"The terms of any writing which is in existence when a will or trust instrument is executed, including but not limited to a statement of administrative provisions and fiduciary powers recorded in a record office of this state, may be incorporated into the will or trust instrument by reference to it to the extent the language of the will or trust instrument manifests an intent to do so and describes the writing sufficiently to permit its identification. . . ."

Item Three of the will gave the residue of Trosch's estate after specific bequests

"unto JEANETTE LEVY and the MARYLAND NATIONAL BANK and their successors, Trustees under Declaration of Trust from me dated____. . . ."

We think that this sufficiently describes the trust instrument which was executed on the same day and

depicted prefatorily as "This Declaration of Trust. . . ." Moreover, the will names as residuary recipients of his estate, the same trustees as he named in the trust instrument. The absence of the date of the trust in the incorporation is not fatal since the trust instrument is otherwise adequately described.

Significantly, we note that the Maryland Legislature has enacted a statute conditionally abrogating the common law rule upon which appellant relies, *i.e.*, that a trust must have a corpus to be in existence. Estates and Trusts Art., § 4-411 permits legacies to unfunded inter vivos trusts:

> "§ 4-411. Legacy to inter vivos trust.
>
> (a) *Legacy to trust.* — A legacy may be made in form or in substance to the trustee in accordance with the terms of a written inter vivos trust, including an unfunded life insurance trust although the settlor has reserved all rights of ownership in the insurance contracts, if the trust instrument has been executed and is in existence prior to or contemporaneously with the execution of the will and is identified in the will, without regard to the size or character of the corpus of the trust or whether the settlor is the testator or a third person."

Appellant points out that, although Estates and Trusts Art., § 4-411 permits such legacies to inter vivos unfunded trusts, it is conditioned upon the trust instrument having been executed and "in existence prior to or contemporaneously with the execution of the will, . . . ." She contends that the trust instrument was not in existence when the will was executed and, therefore, did not comply with § 4-411 because Schedule A, which was recited as scheduling the insurance policies, had not been prepared. We do not infer from the uncompleted schedule, nor from the missing date, as appellant would have us do, that testator executed his will before, rather than after, execution of the trust.

Citing *Bircher v. Wasson*, 133 Ind. App. 27, Professor

Casner points out in I *Estate Planning*, p. 283, that when such a will and trust are executed on the same day, the trust agreement will be regarded as having been executed first because:

"If the trust instrument is executed prior to the execution of the will, it should not make any difference whether the trust comes into existence technically before or after the will is executed. In either case, a beneficiary is described in the will that is capable of receiving a gift from the will at the time the will takes effect. Resort to incorporation by reference should not be necessary to uphold the gift as long as the described trust is in fact in existence when the testator dies. A court which did not choose to recognize this result should, at the very least, treat the instrument as incorporated by reference, even though the will contains no specific language about incorporation by reference." Casner, *supra*, at 687 of 1975 supplement.

Undiscouraged by that seeming set back, appellant rebounds with the contention that because § 4-411 states it should apply "without regard to the size or character of the corpus," those words presuppose *some* corpus and the common law principle upon which she relies (*i.e.*, that a trust must have a corpus to have existence) is not abrogated by the statute. We note, however, that the statute is not conditioned upon the existence of a trust but upon the existence of a trust *instrument*, and we agree with the trial judge that such instrument did exist.

We hold that the trust was in existence as provided in § 4-411 and was identified sufficiently to incorporate it into the will in conformance with § 4-107, so as to permit the distribution of the residue of Trosch's estate to it both under the law and under the terms of his will.[1] Since the trust was

---

1. See Hageman v. Cleveland Trust Company, 343 N.E.2d 121, wherein the Supreme Court of Ohio reached a similar result solely on the basis of incorporation by reference of the trust instrument.

in existence at the time of Trosch's death under the provisions of § 4-411, only a formal revocation of the trust as provided by the instrument could have prevented distribution of the residue to the trust under Trosch's will.[2]

Backed to the wall, appellant finally contends that the settlor did indeed exercise the right of revocation which he had reserved in the trust instrument, by a letter to the bank recalling certain life insurance policies which he had entrusted to it. This letter stated:

> "At the present time, you are holding life insurance policies in trust for me in your Trust Department. They were delivered to you some 5, 6, or seven years ago and I would like to have said policies returned to me. There would be Mutual of New York Policies, Sun Life of Canada, Veterans policy, etc. Whatever you have on my file, please return to me at 4022 Fallstaff Road, Baltimore, Maryland, 21215. My lawyer of record is J. William Martin, One Charles Center, Baltimore, Maryland."

However, we note that the trust instrument clearly set forth the sole means of revocation as being:

> ". . . by an instrument or instruments in writing, signed and acknowledged by him and delivered to the Trustees. . . ."

The trial court found, as a fact, that the letter was not a revocation of the trust, nor even an attempt to do so, and we do not view that finding as clearly erroneous. Md. Rule 1086.

---

**2.** We find it unnecessary to respond to one other contention between the parties. Because Estates and Trusts Art., § 11-105 appears dispositive of the case if the definition therein of "death benefits" includes testamentary bequests, appellees would have us interpret the definition in § 11-105 (a) broadly enough to include such bequests. Appellant, apparently anticipating that argument, contends in her brief that the Legislature intended the section to apply only to those benefits payable to trusts as a result of death that were derived from collateral sources such as insurance, pensions, retirement annuities, profit-sharing plans, etc. Since the result we have reached does not require our answer, it will await another day. Hopefully, by then, the Legislature will have reviewed § 11-105 in light of § 4-411 and coordinated the two sections to provide a single standard and procedure for leaving "death benefits," however defined, to unfunded inter vivos trusts.

Although appellant's arguments show ingenuity, they also show signs of strain. The simple question here is what did the testator intend when he executed the will and trust on the same day. While we are, upon occasion, concerned when highly technical interpretations are used to ascertain a layman's intent, here not only was the testator a lawyer, presumably knowledgeable regarding the instruments he executed, but he was represented by another lawyer as well. It is not unreasonable to assume that these two lawyers were cognizant of statutes then extant, enacted and reenacted. Nor is it unreasonable to view a letter asking for custody of insurance policies from a banker-trustee as something less than a revocation of a trust containing formal provision for revocation. We will not upset the planning of an estate by interpreting a clause of the will too technically and in accordance with an old common law rule which has been superseded by statutes enacted in light of contemporary estate and inheritance tax considerations.

*Judgment affirmed.*
*Costs to be paid by appellant.*